**Certiorari Granted January 6, 2012, No. 33,331**

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2012-NMCA-006**

**Filing Date: November 4, 2011**

**Docket No. 29,238**

**NINA R. STRAUSBERG,**

      **Plaintiff-Appellant,**

**v.**

**LAUREL HEALTHCARE PROVIDERS,
LLC, and ARBOR BROOK, LLC, d/b/a
ARBOR BROOK HEALTHCARE,**

      **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Clay P. Campbell, District Judge**

Harvey Law Firm, LLC
Dusti D. Harvey
Jennifer J. Foote
Albuquerque, NM

for Appellant

Keleher & McLeod, P.A.
Mary Behm
Hari-Amrit Khalsa
Albuquerque, NM

for Appellees

## OPINION

**VIGIL, Judge.**

**{1}**    A party who seeks to compel arbitration has the burden to prove the existence of a

1

valid agreement to arbitrate. In this case, however, the district court shifted the burden to Plaintiff to prove that the agreement is invalid, and granted Defendants' motion to compel arbitration under a nursing home mandatory arbitration agreement. We reverse and remand.

**BACKGROUND**

{2}     Plaintiff was required to sign an arbitration agreement in order to be admitted into a nursing home, Arbor Brook Healthcare (Arbor Brook) to rehabilitate from back surgery. Notwithstanding the agreement to arbitrate, Plaintiff filed a complaint for damages in the district court against the operator of Arbor Brook, Arbor Brook LLC, d/b/a Arbor Brook Healthcare, and Laurel Healthcare Providers, LLC as its owner, operator, or manager (Defendants). Plaintiff alleged that during her stay at Arbor Brook, she developed painful and preventable decubitus ulcers at or near her surgical wound; that her surgical wound became infected; that the infection was ignored or not properly treated, leading to a staph infection; and that her care was negligent in several other respects.

{3}     Defendants responded by filing a motion to dismiss the complaint and compel arbitration, alleging that under the arbitration agreement between Plaintiff and Arbor Brook, all of Plaintiff's claims are subject to arbitration. Plaintiff replied that the arbitration agreement is invalid because it is unconscionable. The district court first ruled that the arbitration agreement is not substantively unconscionable and then held an evidentiary hearing to determine whether the arbitration agreement is procedurally unconscionable. At the hearing, Plaintiff and the nurse liaison who obtained Plaintiff's signature to the arbitration agreement testified what they recalled about the circumstances under which Plaintiff signed the arbitration agreement.

{4}     The district court then issued a letter decision setting forth its ruling and reasoning. The district court said,

> the issue presented was difficult because of the credibility of the witnesses, not in the sense of their truthfulness, but in the sense of their ability to recall the events surrounding the signing of the contract. Only two witnesses testified, one for the Plaintiff and one for Defendant. Ultimately, however, it was Plaintiff's burden to establish the contract she signed is unenforceable.

The district court specifically noted that Plaintiff's testimony demonstrated she was confused about signing the arbitration agreement and attributed her confusion to the pain medication she was under at the time. The district court also ruled that the factors considered to determine the validity of the arbitration agreement "generally are evenly balanced[.]" One of the factors it considered was whether Plaintiff had the option of going to another nursing home facility. As to this factor, the district court found, "Plaintiff believed that her only option was to be discharged from the hospital to Defendant[s'] care, but did not testify whether she looked into other placement options, and it was her burden to prove the contract at issue is unenforceable." Ultimately, the district court ruled that the arbitration agreement

2

was not procedurally unconscionable. A formal order was filed granting Defendants' motion to dismiss and to compel arbitration, and Plaintiff appeals.

**{5}**     To place our holding in context, we first address our standard of review, followed by a discussion of: (1) the enforcement of a valid arbitration agreement; (2) the elements of substantive unconscionability in an arbitration agreement; and (3) the elements of procedural unconscionability in an arbitration agreement. Within this context we then address: (4) which party has the burden of proof when one party seeks dismissal of a suit to compel arbitration under an arbitration agreement, and the other party asserts it is unconscionable; and (5) whether shifting the burden of proof resulted in reversible error.

## DISCUSSION

### Standard of Review

**{6}**     "Whether a contract provision is unconscionable and unenforceable is a question of law that we review de novo." *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 42, 150 N.M. 398, 259 P.3d 803. Our review of a district court order granting or denying a motion to compel arbitration is also de novo. *Piano v. Premier Distrib. Co.*, 2005-NMCA-018, ¶ 4, 137 N.M. 57, 107 P.3d 11; *Heye v. Am. Golf Corp., Inc.*, 2003-NMCA-138, ¶ 4, 134 N.M. 558, 80 P.3d 495. Finally, our review of whether the district court applied the correct evidentiary rule or legal standard in deciding the claim before it is likewise de novo. *See Mayeux v. Winder*, 2006-NMCA-028, ¶ 14, 139 N.M. 235, 131 P.3d 85 (stating that the plaintiff's argument that the district court erred in applying the wrong legal standard to their breach of fiduciary claim is reviewed de novo); *see also State v. Torres*, 1999-NMSC-010, ¶ 28, 127 N.M. 20, 976 P.2d 20 ("[T]he threshold question of whether the trial court applied the correct evidentiary rule or standard is subject to de novo review on appeal.").

### The Enforcement of Arbitration Agreements

**{7}**     Arbitration agreements are enforced under both New Mexico and federal law. *See Piano*, 2005-NMCA-018, ¶ 5; *see also* NMSA 1978, § 44-7A-7(a) (2001) ("An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract."); 9 U.S.C. § 2 (2006) ("[A] contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.").

**{8}**     However, unconscionability is an equitable doctrine rooted in public policy under which an arbitration agreement may be deemed unenforceable. *Rivera*, 2011-NMSC-033, ¶ 43; *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 21, 146 N.M. 256, 208 P.3d 901. New Mexico recognizes both substantive unconscionability and procedural

3

unconsciousability under the doctrine of contractual unconscionability. *Rivera*, 2011-NMSC-033, ¶ 43; *Cordova*, 2009-NMSC-021, ¶ 21. While a mandatory arbitration clause may be invalidated for unconscionability when both substantive and procedural unconscionability are present, "there is no absolute requirement in our law that both must be present to the same degree or that they both be present at all." *Cordova*, 2009-NMSC-021, ¶ 24.

**{9}** When a contractual term is deemed to be unconscionable, two possible remedial actions can be taken.

> If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result.

*Id.* ¶ 39 (internal quotation marks and citation omitted); *see also Smith v. Price's Creameries*, 98 N.M. 541, 545, 650 P.2d 825, 829 (1982) (setting forth the same options under Article II of the Uniform Commercial Code).

**Substantive Unconscionability**

**{10}** Contract terms themselves determine whether they are illegal, contrary to public policy, or grossly unfair, and therefore, substantively unconscionable. *Rivera*, 2011-NMSC-033, ¶ 45 ("Substantive unconscionability concerns the legality and fairness of the contract terms themselves." (quoting *Cordova*, 2009-NMSC-021, ¶ 22)); *Fiser v. Dell Computer Corp.*, 2008-NMSC-046, ¶ 20, 144 N.M. 464, 188 P.3d 1215 ("Substantive unconscionability relates to the content of the contract terms and whether they are illegal, contrary to public policy, or grossly unfair."); *Guthmann v. La Vida Llena*, 103 N.M. 506, 510, 709 P.2d 675, 679 (1985) ("Substantive unconscionability is concerned with contract terms that are illegal, contrary to public policy, or grossly unfair."); *State ex rel. State Highway & Transp. Dep't v. Garley*, 111 N.M. 383, 390, 806 P.2d 32, 39 (1991) (stating that the touchstone for substantive unconscionability is gross unfairness). In determining whether a contract suffers substantive unconscionability, the "analysis focuses on such issues as whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns." *Rivera*, 2011-NMSC-033, ¶ 45 (quoting *Cordova*, 2009-NMSC-021, ¶ 22).

**{11}** In New Mexico, a contract provision that unreasonably benefits one party over another is substantively unconscionable. *Rivera*, 2011-NMSC-033, ¶ 46; *Cordova*, 2009-NMSC-021, ¶ 25; *Guthmann*, 103 N.M. at 511, 709 P.2d at 680; *Monette v. Tinsley*, 1999-NMCA-040, ¶ 19, 126 N.M. 748, 975 P.2d 361. In making this determination, a New Mexico court no longer needs to find that the terms must be "'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Cordova*, 2009-NMSC-021, ¶ 31 (quoting *Hume v. United States*, 132

4

U.S. 406, 411 (1889) (quoting *Earl of Chesterfield v. Janssen*, 2 Ves. Sen. 125, 155, 28 Eng. Rep. 82, 100 (Ch. 1750)).  "It is sufficient if the provision is grossly unreasonable and against our public policy under the circumstances." *Id.*

**Procedural Unconscionability**

**{12}**    A contract or provision therein is procedurally unconscionable where there is such gross inequality in bargaining power between the parties that one party's choice is effectively non-existent. *Guthmann*, 103 N.M. at 510, 709 P.2d at 679.

**{13}**    While not a prerequisite, a contract of adhesion may result in a procedurally unconscionable agreement. *Rivera*, 2011-NMSC-033, ¶ 44. *But see Cordova*, 2009-NMSC-021, ¶ 34 (noting that a contract of adhesion may result in substantive unconscionability) ; *Fiser*, 2008-NMSC-046, ¶ 22 (same).  To determine whether an adhesion contract exists, the court inquires into three factors: "(1) whether it was prepared entirely by one party for the acceptance of the other; (2) whether the party proffering the contract enjoyed superior bargaining power because the weaker party could not avoid doing business under the particular terms; and [(3)] whether the contract was offered to the weaker party without an opportunity for bargaining on a take-it-or-leave-it basis." *Fiser*, 2008-NMCA-046, ¶ 22; *Guthmann*, 103 N.M. at 509, 709 P.2d at 678; *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2010-NMCA-046, ¶ 15, 148 N.M. 784, 242 P.3d 351, *rev'd by* 2011-NMSC-033.  Accordingly, a contract of adhesion may result if all the competitors of the dominate party use essentially the same contract terms or when that dominate party has a monopoly on the relevant geographic market. *Guthmann*, 103 N.M. at 509, 709 P.2d at 678.

**{14}**    Thus, to determine if a contractual provision has the stigma of procedural unconscionability, the circumstances surrounding the formation of the contract must be examined. *Cordova*, 2009-NMSC-021, ¶ 23; *Fiser*, 2008-NMSC-046, ¶ 20; *Guthmann*, 103 N.M. at 510, 709 P.2d at 679.  Circumstances in the contract formation to be examined include whether sharp practices or high pressure tactics were used, the relative sophistication, education, and wealth of the parties, a particular party's ability to understand the terms of the contract, the relative bargaining power of the parties, the relative scarcity of the subject matter of the  contract, and the extent to which either party felt free to accept or decline the terms demanded by the other. *Cordova*, 2009-NMSC-021, ¶ 23; *Guthmann*, 103 N.M. at 510, 709 P.2d at 679.

**Who Has the Burden of Proof**

**{15}**    A legally enforceable contract is a prerequisite to arbitration under the New Mexico Uniform Arbitration Act, and without such a contract, the parties will not be forced to arbitrate. *Piano*, 2005-NMCA-018, ¶ 5; *Heye*, 2003-NMCA-138, ¶ 8; *DeArmond v. Halliburton Energy Servs., Inc.*, 2003-NMCA-148, ¶ 9, 134 N.M. 630, 81 P.3d 573.  The party who seeks to compel arbitration has the burden of proof to establish the existence of a valid agreement to arbitrate. *See Corum v. Roswell Senior Living, LLC*, 2010-NMCA-105,

5

¶¶ 3, 16, 149 N.M. 287, 248 P.3d 329 (stating that the party attempting to compel arbitration has the burden to demonstrate a valid agreement to arbitrate), *cert. denied*, 2010-NMCERT-010, 149 N.M. 64, 243 P.3d 1146; *DeArmond*, 2003-NMCA-148, ¶ 9 (stating that party relying on a contract has the burden to prove it is legally valid and enforceable). Moreover, when the parties dispute the existence of a valid arbitration agreement, any presumption in favor of arbitration disappears. *See DeArmond*, 2003-NMCA-148, ¶ 8; *see also Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002) ("The presumption in favor of arbitration . . . disappears when the parties dispute the existence of a valid arbitration agreement.").

**{16}** The foregoing rules are well embedded in New Mexico jurisprudence. For example, in *Shaw v. Kuhnel & Associates, Inc.*, 102 N.M. 607, 608, 698 P.2d 880, 881 (1985), *superceded by statute as stated in Aguilera v. Palm Harbor Homes, Inc.*, 2002-NMSC-029, ¶ 6, 132 N.M. 715, 54 P.3d 993, our Supreme Court repeats that parties are generally bound to resolve disputes by arbitration when they have contractually agreed to do so. "However, a motion to compel arbitration is essentially a suit for specific performance of an agreement to arbitrate." *Id.* Clearly, a party seeking specific performance has the burden of proving grounds for such relief. In this case, it is the existence of a legally valid and enforceable contractual agreement to arbitrate.

**{17}** We acknowledge and recognize that most courts that have considered the question, place the burden on the party seeking to set aside an arbitration agreement on unconscionability grounds.[1] However, these cases all deal with commercial transactions, and

---

[1]*See, e.g., Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1158 (9th Cir. 2008) (holding that employees challenging the arbitration agreement in their employment contract failed to meet "their burden of establishing that the arbitration clause at issue in this case is unconscionable"); *Faber v. Menard, Inc.*, 367 F.3d 1048, 1053 (8th Cir. 2004) (noting that "[u]nder Iowa law, the burden of proof that a particular provision or contract is unconscionable rests on the party claiming it is unconscionable" and concluding that the employee failed to meet his burden of proving that the arbitrator's fees made the agreement unconscionable due to their prohibitive cost); *Parilla v. IAP Worldwide Servs. VI, Inc.*, 368 F.3d 269, 277 (3d Cir. 2004) (stating that "the burden of proving such unconscionability lies with the party challenging the contract provision" in a case addressing whether the arbitration agreement in an employment contract is unconscionable) (citing E. Allen Farnsworth, *Farnsworth on Contracts* § 4.28 & n.14 (3d ed. 1999)); *Bess v. Check Express*, 294 F.3d 1298, 1306-07 (11th Cir. 2002) (stating that "[u]nder Alabama law, unconscionability is an affirmative defense to the enforcement of a contract, and the party asserting that defense bears the burden of proving it by substantial evidence" in a class action case for alleged violations of state and federal law arising out of "cash advances" or deferred payment transactions between the plaintiffs and the defendants); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999) (applying Pennsylvania law in a suit where the plaintiffs claimed to be victims of a fraudulent home improvement scheme that the "party challenging a contract provision as unconscionable generally bears the burden of

we conclude that they are distinguishable and unpersuasive in the context before us.

**{18}** The case before us is not a mere commercial transaction. When individuals are dealing with admission into a nursing home, the health issue making nursing home care a necessity is often so grave, critical, or severe, that the only focus is on getting proper treatment, with everything else being secondary. In a nutshell, such individuals are often at their most vulnerable, emotionally or physically, or both. And this often includes immediate family members. Moreover, the context does not usually allow for measured consideration of what nursing homes are available, the terms required for admission, and the like. Thus, we have already noted that admission agreements and other admission-related documents such as mandatory arbitration agreements are often presented to aging and infirmed individuals and their families "when they are at their most vulnerable, in need of quick assistance, and potentially can easily be taken advantage of." *Barron v. The Evangelical Lutheran Good Samaritan Soc'y*, 2011-NMCA-094, ¶ 41, 150 N.M. 669, 265 P.3d 720.

**{19}** In recognition of these realities, the West Virginia Supreme Court has declared that all mandatory arbitration clauses in nursing home admission agreements are unconscionable and unenforceable. *Brown v. Genesis Healthcare Corp.*, No. 35494, 2011 WL 2611327 (W. Va. 2011). We have not been asked to, and therefore decline to adopt the holding of *Brown*. Nevertheless, we consider the following expressed reasons for treating nursing home contracts with mandatory arbitration agreements differently from mere commercial contracts very persuasive:

> Because of illness, incapacitation, or physical or mental impairment, people being admitted to a nursing home are usually quite vulnerable . . . .
>
> . . . .
>
> [I]n the 1980s, the government changed the way hospitals were paid for their Medicare patients; since the change, discharge planning occurs "quicker and sicker." The weakened physical and emotional condition of a person from an acute illness is one of the most significant factors that compels a decision to seek post-hospital nursing home placement. Compounding the dangers of this decision-making time, not only is the person being discharged "quicker and sicker," but the hospital treatment itself often further debilitates the person. A person's "decision" to enter a nursing home is, therefore, often made when the person's decision-making abilities are seriously impaired.
>
> Unlike the situation that exists when a consumer signs a contract for a product or service, people entering a nursing home have to sign admissions contracts in the midst of a crisis, without time to comparison shop or to

---

proving unconscionability").

7

negotiate the best service and price combination. Put simply, there is usually little time to investigate options or to wait for an opening at a nursing home of choice. Time pressure during the hospital discharge process significantly impairs people's ability to seek and carefully consider alternatives.

> . . . .

> Ultimately, people being admitted to long-term care facilities and their families have to sign admission contracts without time to comparison shop or to negotiate the best service and price combination. The pressures of deciding placement at such a time, coupled with physical and/or mental infirmities, facing discharge from the hospital, financial limitations, and/or lack of knowledge about long-term care options make consumers vulnerable and dependent on full disclosure by facilities.

(internal quotation marks and footnotes omitted).

**{20}** We therefore hold that when a nursing home relies upon an arbitration agreement signed by a patient as a condition for admission to the nursing home, and the patient contends that the arbitration agreement is unconscionable, the nursing home has the burden of proving that the arbitration agreement is not unconscionable.

**Shifting The Burden of Proof Resulted in Reversible Error**

**{21}** Defendants had the burden of proving that the arbitration agreement is not unconscionable. However, the district court shifted the burden to Plaintiff to prove that the arbitration agreement is not unconscionable. We conclude this was reversible error.

**{22}** We have demonstrated that many factual issues must be decided by a district court in determining whether an arbitration agreement is unconscionable. In determining whether the contract is procedurally unconscionable, the district court said the issues were difficult to decide because neither Plaintiff nor the nurse who obtained her signature on the arbitration agreement had clear recollections of the factual circumstances, and that the factors it considered to determine whether the arbitration agreement is unconscionable "generally are evenly balanced[.]" The district court said that the "deciding factor" in its mind was Plaintiff's understanding of the arbitration agreement at the time she signed it. However, we have no way of assessing what weight the court would have given this evidence, or whether the district court would have come to the same conclusion if the burden of proof had been properly allocated to Defendants. In addition, we have no way of determining whether the district court applied the correct burden of proof in ruling that the mandatory arbitration agreement is not substantively unconscionable. Moreover, when the issue of substantive unconscionability was first considered, the parties and the district court did not have the benefit of our Supreme Court's opinion in *Rivera*, 2011-NMSC-033. We therefore reverse the order of the district court. *See State v. Fernandez*, 128 N.M. 111, ¶ 36, 990 P.2d 224 (Ct. App. 1999) (reversing and remanding for a new suppression hearing where trial court

8

applied incorrect standard in reviewing alleged falsehoods and omissions in a search warrant affidavit); *see also State v. Young*, 117 N.M. 688, 692, 875 P.2d 1119, 1123 (Ct. App. 1994) (remanding because the district court applied the wrong legal standard in deciding whether voluntary intoxication was relevant to a waiver of *Miranda* rights).

**{23}** On remand, we encourage the district court to enter findings of fact and conclusions of law pursuant to Rule 1-052 NMRA to facilitate appellate review of its factual determinations relating to unconscionability and its legal ruling on whether the arbitration is legally unconscionable.

## CONCLUSION

**{24}** We reverse and remand for further proceedings in accordance with this Opinion.

**{25}** **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**I CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**JAMES J. WECHSLER, Judge (dissenting).**

**WECHSLER, Judge (dissenting).**

**{26}** Our Supreme Court has stated the "fundamental principle that arbitration is a matter of contract." *Rivera*, 2011-NMSC-033, ¶ 16 (internal quotation marks and citation omitted). To this end, "courts must place arbitration agreements on an equal footing with other contracts[.]" *Id.* (internal quotation marks and citation omitted). I therefore do not agree with shifting the burden to the party seeking to enforce an arbitration agreement to prove that an arbitration agreement is not unconscionable, because this position does not have a basis in well-established contract law. As a result, I respectfully dissent.

**{27}** The majority correctly states that "[t]he party who seeks to compel arbitration has the burden of proof to establish the existence of a valid agreement to arbitration." Majority Opinion ¶ 15. However, the cases cited by the majority indicate that this burden applies to contract formation issues, not to defenses by a party seeking to stop the enforcement of an otherwise valid contract. For example, in *DeArmond*, 2003-NMCA-148, ¶¶ 11-14, the issues addressed by this Court were whether a party to an arbitration agreement had knowledge of a change in his employment contract that included a mandatory arbitration clause and therefore accepted the modification and, alternatively, whether mutuality existed to form a binding contract. *Corum*, 2010-NMCA-105, ¶ 16, similarly addresses contract formation

9

issues.  In particular, the issue in *Corum* was whether the individual who entered into an arbitration agreement on behalf of a nursing home patient had statutory authority to enter into the agreement.  *Id.*

**{28}**  Unconscionability, on the other hand, is an equitable doctrine that is a defense or "exception" to enforcing an otherwise valid contract.  *See Montano v.  N.M. Real Estate Appraiser's Bd.*, 2009-NMCA-009, ¶ 12, 145 N.M. 494, 200 P.3d 544 ("We will allow equity to interfere with enforcing clear contractual obligations only when well-defined equitable exceptions, such as unconscionability, mistake, fraud, or illegality justify deviation from the parties' contract." (internal quotation marks and citation omitted)); *see also Fidelity Nat'l Bank v. Tommy L. Goff, Inc.*, 92 N.M. 106, 107, 583 P.2d 470, 471 (1978) (stating that the answer to a complaint contained the "affirmative defense" of unconscionability). Generally, a party seeking to set aside enforcement of a contract based on a defense or exception, such as unconscionability, has the burden of proof.  *See Mason v. Salomon*, 62 N.M. 425, 429, 311 P.2d 652, 654 (1957) (holding that the party seeking to set a contract aside for fraud has the burden of proof); *see also W. Commerce Bank v. Gillespie*, 108 N.M. 535, 538, 775 P.2d 737, 740 (1989) (declining to shift the burden of persuasion to the party challenging a contract because the action was "a simple contract issue" requiring the court to determine whether the "making of the contract" satisfied the "condition[s] precedent" as opposed to an action seeking to set aside a contract on a ground such as fraud, mistake, misrepresentation, or undue influence).  Similarly, *Farmington Police Officers Ass'n Commc'n Workers of Am. Local 7911 v. City of Farmington*, 2006-NMCA-077, ¶ 16, 139 N.M. 750, 137 P.3d 1204, addressed the burden of proof in an arbitration case and concluded that the party seeking to enforce an arbitration clause in a collective bargaining agreement had the burden of persuasion as to whether the clause applied to the dispute.  In *Farmington Police Officers Ass'n*, this Court stated that

> we believe that where the meaning of a material contract term is in dispute a party seeking affirmative relief based upon its interpretation necessarily bears the burden of establishing that its interpretation controls.  This approach is consistent with the general default rule allocating the burden of persuasion in civil cases to the party who invokes the authority of a court to alter the extrajudicial status quo.

*Id.* (citation omitted).

**{29}**  As the majority acknowledges, most courts that have addressed the issue have placed the burden on the party seeking to set aside an arbitration agreement on unconscionability grounds.  Majority Opinion ¶ 17 n.1.  Consistent with these other courts, this Court has recently clarified that the party challenging a provision of an arbitration agreement that banned class action claims on unconscionability grounds has the burden of proof.  *See Felts v. CLK Mgmt., Inc.*, 2011-NMCA-062, ¶¶ 34, 37, 149 N.M. 681, 254 P.3d 124, *cert. granted*, 2011-NMCERT-006, 150 N.M. 763, 266 P.3d 632 (Nos. 33,011 and 33,013, June 8, 2011).

**{30}**  The majority distinguishes *Felts* and cases from other jurisdictions because the cases

involve "commercial transactions." Majority Opinion ¶ 17. However, even cases in other jurisdictions specifically involving challenges to arbitration agreements in nursing home admission documents impose the burden of proof upon the party challenging the agreement. *See, e.g.*, *Briarcliff Nursing Home, Inc. v. Turcotte*, 894 So. 2d 661, 665 (Ala. 2004) ("The burden of proving unconscionability of an arbitration agreement rests with the party challenging the agreement." (internal quotation marks and citation omitted)); *Estate of Perez v. Life Care Ctrs. of Am. Inc.*, 23 So. 3d 741, 742 (Fla. Dist. Ct. App. 2009) ("The party seeking to avoid the arbitration provision has the burden to establish unconscionability."); *Hayes v. Oakridge Home*, 122 Ohio St. 3d 63, 2009-Ohio-2054, 908 N.E.2d 408, at ¶ 20 ("The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable.").

**{31}** I also note that in *Brown*, 2011 WL 2611327, the West Virginia Supreme Court stated the policy considerations quoted in Paragraph 19 of the majority opinion as background to establish the context of the agreements in the case, rather than as the basis for its holding that mandatory arbitration clauses in nursing home admission documents adopted prior to the negligent incident at issue are unconscionable. West Virginia recognizes, as a matter of public policy, a "public service" exception to the enforcement of pre-injury contracts that either absolves a public service provider of liability for personal injuries or wrongful death or that allows a public service provider to escape public scrutiny in the courtroom. *Id.* *Brown* invalidated the arbitration agreements based on the public service exception because a nursing home is a public service provider and the arbitration agreements prevented the nursing homes from "courtroom scrutiny of their negligent conduct that caused a personal injury or wrongful death[.]" *Id.*

**{32}** Although I share the majority's concern that "individuals are often at their most vulnerable, emotionally or physically, or both" when seeking admission to a nursing home, I do not believe this concern justifies a sweeping exception to well-established law for nursing home patients that the majority creates. Majority Opinion ¶ 18. I would therefore treat an arbitration agreement signed by a patient as a condition for nursing home admission the same as any other arbitration agreement and would hold that, generally, a party seeking to set aside the arbitration agreement has the burden of proving that the arbitration agreement is unconscionable. A party's vulnerability is a fact for the court to consider in determining the issue of procedural unconscionability.

**{33}** Moreover, even assuming that there may be appropriate cases for a district court to shift the burden of proof to a party seeking to set aside an arbitration agreement when the facts of the case indicate that the party seeking to enforce the arbitration agreement would be in a better position to prove whether an arbitration agreement is unconscionable, this is not such a case. The district court found that upon admission to the nursing home on April 11, 2007, Plaintiff was confused as the result of pain medication, that she had ten minutes to complete forty minutes of paperwork during the admission process, and that she did not have her glasses. However, the district court further found that Plaintiff signed the arbitration agreement on April 10, 2007, before the transfer to the nursing home; and Plaintiff presented no testimony regarding her state of mind or condition on that date. Additionally, the district

court stated that the "deciding factor" in determining that the arbitration agreement was not unconscionable was Plaintiff's understanding of the agreement at the time she signed it. Importantly, Plaintiff admitted that she understood that the arbitration agreement "significantly limited her rights," even though she was medicated. Under these circumstances, the district court did not err in determining that Plaintiff had the burden to prove that the arbitration agreement was unconscionable, and I respectfully dissent.

_____

**JAMES J. WECHSLER, Judge**

**Topic Index for *Strausberg v. Laurel Healthcare Providers, LLC*, No. 29,238**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-FE | Fundamental Error |
| AE-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-BP | Burden of Proof |
| CP-DC | Discovery |
| | |
| **CN** | **CONTRACTS** |
| CN-UC | Unconscionable |
| | |
| **RE** | **REMEDIES** |
| RE-AN | Arbitration |
| | |
| **TR** | **TORTS** |
| TR-MG | Malpractice, General |
| TR-MM | Medical Malpractice |