**Certiorari Denied, December 5, 2012, No. 33,818**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-014**

**Filing Date: August 16, 2012**

**Docket No. 30,191**

**CELESTE RUPPELT, as Personal**
**Representative of the Wrongful Death**
**Estate of THEODORE LENDEEN, Deceased,**

     **Plaintiff-Appellee,**

**v.**

**LAUREL HEALTHCARE PROVIDERS,**
**LLC, LAUREL MEADOWS, L.L.C.; AT**
**HEALTH VENTURES, L.L.C.; A & J**
**VENTURES, L.L.C.; HEALTHCARE**
**MANAGEMENT SERVICES, L.L.C.;**
**BELEN MEADOWS HEALTHCARE AND**
**REHABILITATION CENTER, L.L.C.;**
**SKILLED HEALTHCARE GROUP, INC.,**
**SKILLED HEALTHCARE, L.L.C.; M. SCOTT**
**ATHANS, CHRISTOPHER A. TAPIA; and**
**ALAN ZAMPINI,**

     **Defendants-Appellants.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Beatrice J. Brickhouse, District Judge**

Law Office of Scott E. Boehm, P.C.
Scott E. Boehm
Phoenix, AZ

Wilkes & McHugh, P.A.
Mary Ellen Spiece
Phoenix, AZ

for Appellee

1

Keleher & McLeod, P.A.
Mary Behm
Regina Y. Moss
Albuquerque, NM

for Laurel Appellants

Rodey Dickason, Sloan, Akin & Robb, P.A.
W. Robert Lasater, Jr.
Sandra L. Beerle
Albuquerque, NM

for Belen Appellants

**OPINION**

**GARCIA, Judge.**

{1}     This case requires us to examine the substantive conscionability of an arbitration agreement that a nursing home requires patients to sign as a condition of admission to the home. Defendants Laurel Healthcare Providers, L.L.C., Laurel Meadows, L.L.C., AT Health Ventures, L.L.C., A & J Ventures, L.L.C., Healthcare Management Services, L.L.C., Marion Scott Athans, Christopher A. Tapia and Alan Zampini (collectively, Laurel Defendants), and Defendants Belen Meadows Healthcare and Rehabilitation Center, L.L.C., Skilled Healthcare, L.L.C., and Skilled Healthcare Group, Inc. (collectively, Belen Defendants; combined, the Laurel Defendants and Belen Defendants shall be referred to as Defendants) appeal the district court's denial of their respective motions to dismiss and compel arbitration pursuant to the terms of their arbitration agreement (the Agreement) entered into with one of their residents, Theodore Lendeen. The district court found the Agreement was substantively unconscionable under New Mexico law because it was unfairly one-sided in favor of Defendants. Defendants ask this Court to reverse the district court's decision and remand to the district court with instructions to dismiss the complaint and compel arbitration. We affirm the ruling of the district court in favor of Plaintiff.

**BACKGROUND**

{2}     This appeal arises from a personal injury lawsuit filed by Plaintiff, as personal representative of the wrongful death estate of her father, Theodore Lendeen. Plaintiff's complaint is based on facts that arose out of the care provided to Mr. Lendeen while he was a resident at a nursing home known as Laurel Meadows Healthcare (Laurel Meadows) and/or Belen Meadows Healthcare and Rehabilitation Center (Belen Meadows). Laurel Defendants owned and operated the nursing home until September 1, 2007, when Belen Defendants thereafter assumed operation of the nursing home. The Agreement at issue in this case was a separate attachment to the Laurel Meadows admission agreement (the Admission

Agreement) that Plaintiff signed on behalf of her father in March 2006. In September 2007, when Belen Defendants assumed operation of the nursing home, they assumed all rights and responsibilities under the Agreement.

**{3}**     Under the terms of the Agreement, both parties "relinquish[ed] their right to have any and all disputes associated with [the Agreement] and the relationship created by the Admission Agreement . . . resolved through a lawsuit, . . . except to the extent that New Mexico law provides for judicial action in arbitration proceedings." The Agreement made two exceptions to the requirement that the parties resolve all disputes through arbitration. It stated, "[t]his [a]rbitration [a]greement shall not apply to disputes pertaining to collections or discharge of residents."

**{4}**     Based on the language in the Agreement, Defendants responded to Plaintiff's complaint by filing motions to dismiss and compel arbitration (motions to compel). Defendants argued that the claims raised in Plaintiff's complaint were the type of claims that were to be arbitrated under the terms of the Agreement and that challenges to the enforceability of the Agreement should be decided by an arbitrator. Plaintiff opposed the motions to compel alleging, among other things, that the Agreement was substantively unconscionable.

**{5}**     Relying on the New Mexico Supreme Court's opinion in *Cordova v. World Finance Corp. of N. M.*, 2009-NMSC-021, 146 N.M. 256, 208 P.3d 901, the district court ruled that the Agreement was inherently one-sided in favor of Defendants. It explained that the Agreement required residents like Mr. Lendeen to arbitrate their most common claims but allowed Defendants to litigate the claims it was most likely to bring—those relating to collections or discharge of residents. As a result, the district court concluded that the Agreement was substantively unconscionable and denied Defendants' motions to compel. In doing so, the district court also rejected Defendants' secondary argument that, should the district court find that the arbitration clause's exemption provision was unconscionable, it could still achieve the basic purpose of the Agreement by applying the severance clause to carve out the unenforceable exemptions to arbitration. Defendants filed timely appeals jointly challenging the district court's rulings denying their motions to dismiss and compel arbitration.

**DISCUSSION**

**A.     Standard of Review**

**{6}**     We review de novo a district court's order denying a motion to compel arbitration. *Felts v. CLK Mgm't, Inc.*, 2011-NMCA-062, ¶ 14, 149 N.M. 681, 254 P.3d 124, *cert. granted*, 150 N.M. 764, 266 P.2d 633 (2011); *Strausberg v. Laurel Healthcare Providers, LLC*, 2012-NMCA-006, ¶ 6, 269 P.3d 914, *cert. granted*, 2012-NMCERT-001 (No. 33,331, Jan. 6, 2012). The question of whether a contract provision is unconscionable is a matter of law that we also review de novo. *Id.* The party attempting to compel arbitration carries the

3

burden of demonstrating that the arbitration agreement is valid.  *Id.* ¶ 1; *Corum v. Roswell Senior Living, LLC*, 2010-NMCA-105, ¶ 3, 149 N.M. 287, 248 P.3d 329.

## B.    Arbitrability

**{7}**    We first review Defendants' argument that the district court did not have authority to decide that the Agreement was unconscionable because the terms of the Agreement delegated this decision to an arbitrator.  The arbitrability of a particular dispute is generally a threshold issue to be decided by the district court.  *Felts*, 2011-NMCA-062, ¶ 17.  However, parties to an arbitration agreement can choose to have an arbitrator decide the question of arbitrability instead of the district court.  *Id.* ¶ 18.  To validly do so, the parties' intent to transfer the question of arbitrability exclusively to an arbitrator must be clearly and unmistakably evidenced by the terms of the agreement.  *Id.*  Where the parties have validly transferred the question of arbitrability to an arbitrator, "a district court is precluded from deciding a party's claim of unconscionability unless that claim is based on the alleged unconscionability of the delegation provision itself."  *Id.* ¶ 20.

**{8}**    On appeal, Defendants argue that the Agreement contained a clear delegation provision that Plaintiff did not challenge and, therefore, it would be improper to permit the district court to determine arbitrability.  We agree that by requiring both parties to relinquish the right to access a judicial forum for all claims except those related to collections or discharge of residents, the terms of the Agreement may have delegated the threshold question of enforceability to the arbitrator.    *Id.* ¶ 23; *see Bd. of Educ. of Carlsbad Mun. Schs. v. Harrell*, 118 N.M. 470, 476, 882 P.2d 551, 517 (1994) ("Arbitration required by statute is compulsory; arbitration freely entered into by contract is voluntary.").  However, Plaintiff did challenge the enforceability of the entire Agreement.  In addition, as explained below, we conclude that Defendants waived their argument that the arbitrator had exclusive authority to decide arbitrability because they decided to voluntarily address the enforceability of the Agreement in the district court and never even suggested that the court did not have authority to address the issue.  *See Dean Witter Reynolds, Inc. v. Roven*, 94 N.M. 273, 275, 609 P.2d 720, 722 (1980) (recognizing the general policy against a waiver of arbitration rights unless one party's conduct has given it an undue advantage or resulted in prejudice to another); *see also State v. Young*, 117 N.M. 688, 690, 875 P.2d 1119, 1121 (Ct. App. 1994) ("[T]o allow a defendant to invite error and to subsequently complain about that very error would subvert the orderly and equitable administration of justice.").  Belen Defendants waived any delegation argument and expressly agreed and asked the district court to determine the initial question of arbitrability.  Counsel for Belen Defendants argued in the district court that the"initial threshold argument . . . is that the [district court] must determine initially whether or not there is an enforceable [Agreement]."

**{9}**    Similarly, counsel for Laurel Defendants did not address or even mention the question of authority to decide arbitrability during arguments to the district court.  *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked, but formal exceptions are not required[.]");

*State v. Reyes*, 2002-NMSC-024, ¶ 41, 132 N.M. 576, 52 P.3d 948 (explaining that parties must object at trial in order to alert the district court of the perceived error, to allow the court to correct any error, and to provide an adequate record for appellate review), *abrogated on other grounds by Allen v. LeMaster*, 2012-NMSC-001, ¶ 36, 267 P.3d 806. As a result, Defendants' contention regarding the proper forum to rule on the delegation clause was either waived or acquiesced to and conceded in the district court. We need not address the issue in this case and leave any further development of *Felts* for another day.

## C.      Substantive Unconscionability

**{10}**    Defendants contend that the district court erred when it ruled that the Agreement was substantively unconscionable. They assert that the Agreement's exemption provision is not unreasonably one-sided because it bilaterally allows either party to pursue claims regarding collections and discharge of residents in a judicial forum. Thus, the key question is whether the type of exemption clause in the Agreement is sufficiently fair to avoid being substantively unconscionable as a matter of law.

**{11}**    "Unconscionability is an equitable doctrine, rooted in public policy, which allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party." *Cordova*, 2009-NMSC-021, ¶ 21. "Substantive unconscionability concerns the legality and fairness of the contract terms themselves." *Id.* ¶ 22; *see Fiser v. Dell Computer Corp.*, 2008-NMSC-046, ¶ 20, 144 N.M. 464, 188 P.3d 1215 ("Substantive unconscionability relates to the content of the contract terms and whether they are illegal, contrary to public policy, or grossly unfair."). As a result, this Court will "focus[] on such issues as whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns" to determine whether a contract provision is substantively unconscionable. *Cordova*, 2009-NMSC-021, ¶ 22. In New Mexico, this issue is primarily guided by two recent Supreme Court decisions that invalidated arbitration provisions as unreasonably one-sided pursuant to a substantive unconscionability analysis. *See Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 47, 150 N.M. 398, 259 P.3d 803; *Cordova*, 2009-NMSC-021, ¶ 32.

**{12}**    In this case, the district court relied on *Cordova* to determine that the Agreement was substantively unconscionable. In *Cordova* our Supreme Court voided an arbitration provision used by a small loan company as inherently one-sided because it required the borrower to submit its claims to arbitration but allowed the lender the option of litigating the type of claim it was most likely to seek against the borrower. *Id.* ¶¶ 1, 32. Our Supreme Court focused its conscionability analysis exclusively on the one-sidedness of the agreement's terms, which the Court described as "egregious." *Id.* ¶¶ 26-27, 32. It determined that an arbitration provision, exempting the lender from arbitration in cases of default, its most likely type of claim, but required the borrower to arbitrate all of its claims was unfairly one-sided. *Id.* The Court explained:

It is highly unlikely that [the lender] will find itself at odds with the contractual terms of its own form agreements, or the circumstances of its lending or collection practices, or claim it was the victim of a fraudulent consumer scheme, or have any other reason to make a claim against its borrowers for violation of consumer protection laws.

*Id.* ¶ 27. Thus, it was highly unlikely that the lender would be limited to arbitration when seeking its remedies against the borrower. *See id.* ¶ 26. As a result, the Court held that the arbitration agreement was substantively unconscionable and struck the arbitration agreement in its entirety from the loan agreement. *Id.* ¶ 40.

**{13}** Two years later, our Supreme Court again concluded that an arbitration agreement was substantively unconscionable. *See Rivera*, 2011-NMSC-033, ¶ 10. In *Rivera*, a form car title loan contract used by the title loan lender contained an arbitration agreement that encompassed "any and all claims" that the borrower could conceivably have against the lender. *Id.* ¶ 3. The arbitration agreement, however, exempted certain claims that the lender might have against the borrower. *Id.*

**{14}** Although the issue of unconscionability was not necessary to render the decision in *Rivera*, our Supreme Court decided that it would specifically address the issue in order to "correct the Court of Appeals' overly narrow construction of [the] holding in *Cordova*," which focused on the fact that the arbitration provision was not completely one-sided. *Rivera*, 2011-NMSC-033, ¶ 10. The Supreme Court explained that the arbitration clause at issue was unfairly one-sided because it gave one party the ability "to seek judicial redress of its likeliest claims while forcing [the other party] to arbitrate any claim she may have." *Id.* ¶ 53. As a result, our Supreme Court held that it was void under New Mexico law. *Id.* ¶ 54. Thus, in holding that the arbitration agreement was substantively unconscionable, our Supreme Court clarified that substantive unconscionability requires a focus on fairness, not complete one-sidedness. *Id.* ¶¶ 45, 54. As a result, while we agree with Defendants that this arbitration provision is not as completely one-sided as the arbitration provision in *Cordova*, we are not persuaded by their argument that the Agreement is sufficiently fair and bilateral because it provides both parties with access to the judicial system for disputes pertaining to collections and discharge of residents. *See Figueroa v. THI of N. M. at Casa Arena Blanca LLC*, 2012-NMCA-__, ¶¶ 28, 30, (No. 30,477, July 18, 2012) (refusing to enforce a nursing home arbitration agreement where the drafter reserved the majority of its claims while subjecting essentially all the resident's claims to arbitration).

**{15}** Although the exemption provision is facially bilateral in the sense that it does not completely extinguish Plaintiff's right to access the courts, in effect this distinction from *Cordova* and *Rivera* is illusory. This Court recently addressed similar issues in *Figueroa*. 2012-NMCA-__, ¶¶ 28-33. Common sense dictates that claims relating to collection of fees and discharge of residents are the types of remedies that a nursing home, not its resident, is most likely to pursue. *Id.* ¶ 31 (noting that it is self-evident that guardianship, collections, and eviction proceedings would be the most likely claims brought by the nursing home).

6

**{16}** Defendants did argue that it is not "completely outside of the realm of possibilities" that a resident may pursue a legal remedy against nursing home with respect to debt collection or the discharge of a resident, although they did acknowledge that such situations are rare. Thus, Defendants recognized the practical reality of their exemption provision. It provides Defendants with a judicial forum to litigate its most likely and beneficial claims while totally excluding access to the judicial system for claims regarding negligent care, the most likely claims to be pursued by a resident such as Plaintiff. *See id.* ¶ 32 (stating that the exemption of the nursing home's most likely claims from arbitration rendered the agreement sufficiently one-sided to be deemed unconscionable).

**{17}** Defendants did not provide any factual evidence regarding the one-sided nature of the claims exempted from arbitration. We do not rule out the possibility that probative evidence could be offered in this type of case. Here, however, Defendants declined the suggestion made at oral argument that this Court consider remanding the matter for further factual development regarding the facial one-sidedness of the exempted claims. Defendants agreed that further factual development was unnecessary. As a result, the district court approach regarding the lopsided nature of the claims removed from mandatory arbitration was proper in this case.

**{18}** While no single, precise definition of substantive unconscionability can be articulated, substantive unconscionability broadly refers to whether the material terms of a contract are patently unfair and more beneficially one-sided in favor of the more powerful party. *See Rivera*, 2011-NMSC-033, ¶¶ 43, 53. By excepting disputes pertaining to collections and discharge of residents from arbitration, Defendants chose the forum to resolve their disputes that were presumptively deemed to be "most likely," while simultaneously forcing Plaintiff, the weaker party, to arbitrate her most likely disputes. As a result, although the exemption provision may facially appear to apply evenhandedly, its practical effect unreasonably favors Defendants, and the provision's bilateral appearance is inaccurate. *See Fitz v. NCR Corp.*, 13 Cal. Rptr. 3d 88, 104 (Ct. App. 2004) (explaining that an arbitration agreement lacks bilaterality where it "compels arbitration of the claims more likely to be brought by the weaker party but exempts from arbitration the types of claims that are more likely to be brought by the stronger party"); *Iwen v. U.S. West Direct*, 1999 MT 63, ¶ 32, 293 Mont. 512, 977 P.2d 989 (explaining that arbitration agreements need not "contain mutual promises that give the parties identical rights and obligations," but "the rights of the contracting parties must not be so one-sided and unreasonably favorable to the drafter . . . that the agreement becomes unconscionable and oppressive"). As a result, we conclude that the Agreement is unfair and unreasonably one-sided. Therefore, it is not necessary for us to consider whether the provision was also procedurally unconscionable or supported by consideration. *See Rivera*, 2011-NMSC-033, ¶ 54; *Figueroa*, 2012-NMCA-__, ¶¶ 23, 34-35.

**D.      The Arbitration Savings Clause and Severability**

**{19}** Defendants next argue that even if the portion of the Agreement exempting disputes pertaining to collections and discharge of residents is substantively unconscionable, the

7

Agreement's savings clause should act to sever the offending portion and enforce the remainder of the arbitration agreement. The Agreement's "savings clause" states: "If any provision of this [a]rbitration [a]greement is found to be invalid, the other provisions shall remain enforceable.

**{20}** "When [the Court of Appeals] determines that contract provisions are unenforceable we can either strike the provisions in their entirety or reform the provisions into a fair and balanced agreement." *Rivera*, 2011-NMSC-033, ¶ 55 (alteration, internal quotation marks, and citation omitted); *see Figueroa*, 2012-NMCA-__, ¶ 38. In *Cordova* and *Rivera*, the Court concluded that the one-sided arbitration provisions were central to the overall arbitration scheme and, therefore, the unconscionable provisions could not be severed from the arbitration provisions so as to save the parties' general agreement to arbitrate. *Rivera*, 2011-NMSC-033, ¶ 56; *Cordova*, 2009-NMSC-021, ¶ 40. The Court stated in *Cordova* "[w]e must strike down the arbitration clause in its entirety to avoid a type of judicial surgery that inevitably would remove provisions that were central to the original mechanisms for resolving disputes between the parties." 2009-NMSC-021, ¶ 40.

**{21}** In *Figueroa*, we directly addressed and rejected the defendants' savings clause argument. 2012-NMCA-__, ¶¶ 38-40. Consistent with *Figueroa*, we shall also follow *Rivera* and *Cordova*, thereby refusing to sever Defendants' exemption provision from the remainder of the Agreement. *Rivera*, 2011-NMSC-033, ¶ 56; *Cordova*, 2009-NMSC-021, ¶ 40. As a result, for the reasons discussed in *Figueroa*, we hold that the arbitration provision was properly struck from the Agreement in its entirety. 2012-NMCA-__, ¶¶ 38-40.

**CONCLUSION**

**{22}** The arbitration provision in the Agreement is unenforceable. For the foregoing reasons, we affirm the decision of the district court.

**{23} IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**I CONCUR:**

_____

**CYNTHIA A. FRY, Judge**

**JONATHAN B. SUTIN, Judge (specially concurring).**

**SUTIN, Judge (specially concurring).**

8

**{24}** I concur. I ask, has our Supreme Court already decided that an arbitration clause is substantively unconscionable as unfairly one-sided when the clause excludes from arbitration one or more claims most likely to be pursued by the healthcare or loan company, even if the healthcare or loan company might be able to establish that litigating a claim in court is in the best interests of both parties in terms of economy and perhaps even speed? It would appear so. *See Rivera*, 2011-NMSC-033, ¶ 53 ("[The defendant's] ability under the arbitration clause to seek judicial redress of its likeliest claims while forcing [the plaintiff] to arbitrate any claim she may have is unreasonably one-sided."). *Figueroa* also tends in that direction. *See Figueroa*, 2012-NMCA-___, ¶ 30. If where we are headed is that under no circumstance can a healthcare facility or nursing home escape unconscionability or unlawful contract adhesion when its arbitration clause exempts a claim that it is most likely to pursue, I respectfully suggest that the Supreme Court should clearly lay the matter to rest.

_____
**JONATHAN B. SUTIN, Judge**

**Topic Index for *Ruppelt v. Laurel Healthcare Providers, LLC*, No. 30,191**

**APPEAL AND ERROR**
Standard of Review

**CIVIL PROCEDURE**
Arbitration

**CONTRACTS**
Contracts Against Public Policy
Unconscionable

**REMEDIES**
Arbitration

**NEGLIGENCE**
Wrongful Death