**Certiorari Granted, December 6, 2012, No. 33,898**

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2013-NMCA-006**

**Filing Date: October 11, 2012**

**Docket No. 31,088**

**LORAYNE and GENE BARGMAN**,

      **Plaintiffs-Appellees,**

**v.**

**SKILLED HEALTHCARE GROUP, INC.,
SKILLED HEALTHCARE, L.L.C., CANYON
TRANSITIONAL REHABILITATION
CENTER, L.L.C., and ANMARIE DVORAK,
Administrator,**

      **Defendants-Appellants.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Valerie A. Huling, District Judge**

Harvey Law Firm, LLC
Dusti D. Harvey
Jennifer J. Foote
Albuquerque, NM

for Appellees

Rodey, Dickason, Sloan, Akin & Robb, P.A.
W. Robert Lasater, Jr.
Sandra L. Beerle
Jocelyn Drennan
Albuquerque, NM

for Appellants

### OPINION

**SUTIN, Judge.**

**{1}**     Plaintiff LoRayne Bargman was admitted to Defendant Canyon Transitional Rehabilitation Center, L.L.C. (Canyon) for inpatient rehabilitative care. She sued Canyon and other related Defendants on claims arising out of the care she received there. The issue in the district court was whether she was required to arbitrate the claims pursuant to an arbitration agreement she signed upon admission into Canyon. The court ruled that the arbitration agreement was substantively unconscionable. Defendants appeal. We reverse and remand for further proceedings consistent with this Opinion.

**BACKGROUND**

**{2}**     After Ms. Bargman fractured a hip and an ankle, her doctors ordered her to seek inpatient rehabilitative care. She was admitted to Canyon to receive treatment. After about a month of treatment, Ms. Bargman was provided with an admission agreement. The signature page of the admission agreement explained that parts of it existed in attachments.

**{3}**     A three-page arbitration agreement was included as a separate attachment to the admission agreement. The second paragraph on the first page of the arbitration agreement explained that by entering into the admission agreement, Canyon and "the Resident" were exchanging "mutual promises" to arbitrate "any [d]ispute" as later defined. It further explained that if a dispute arose, the parties desired to use alternative dispute resolution to resolve the dispute "in an expeditious manner[.]"

**{4}**     Another paragraph, in addition to describing the informal and binding aspects of arbitration, explained:

> By signing this Arbitration Agreement, [Canyon] and the Resident relinquish their right to have any and all disputes associated with this Arbitration Agreement and the relationship created by the Admission Agreement . . . (including, without limitation, . . . claims for negligent care or any other claims of inadequate care provide[d] by [Canyon]; claims against [Canyon] or any of its employees, managers, or members) (each, a "[d]ispute" and, collectively, the "[d]isputes"), resolved through a lawsuit, namely by a judge, jury[,] or appellate court, except to the extent that New Mexico law provides for judicial action in arbitration proceedings. This Arbitration Agreement shall not apply to either [Canyon] or the Resident in any disputes pertaining to collections or discharge of residents.

Another paragraph stated:

> BY SIGNING THIS AGREEMENT, [CANYON] AND THE RESIDENT UNDERSTAND THAT THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO A TRIAL IN COURT BY A JUDGE OR

2

JURY, AND THE RIGHT TO APPEAL CONCERNING ANY DISPUTES.

**{5}** A further paragraph encouraged the resident to "ask any questions" about the arbitration agreement "and/or to seek the advice of an attorney prior to signing [the] Agreement." The arbitration agreement provided a line for the resident to initial, acknowledging these considerations.

**{6}** The second page of the arbitration agreement contained paragraphs outlining how the arbitration process would work in practice. For example, Canyon and the resident would each select an arbitrator, each of whom, in turn, would select a third arbitrator who would serve as the lead arbitrator and resolve any pre-arbitration disputes. Further, the lead arbitrator would establish "a reasonable, but limited scheduling order" that would enable the arbitration hearing to take place "within twelve . . . months following the appointment of the arbitrators." Other paragraphs addressed mutual discovery rights, identified the arbitration venue, and explained that while Canyon would "pay 100% of the arbitrators' fees[,]" each side would pay their own attorney fees and costs incurred during the arbitration process. A "governing law" paragraph explained that New Mexico law, including the New Mexico Uniform Arbitration Act (the Arbitration Act) and any applicable federal laws would govern the enforceability of the arbitration agreement.

**{7}** A third page was the signature page. By signing, the resident, among other things, acknowledged:

> I REPRESENT AND AGREE THAT I FULLY UNDERSTAND AND AGREE TO BE LEGALLY BOUND BY [THE ARBITRATION AGREEMENT'S] PROVISIONS. I UNDERSTAND THAT I HAVE A CHOICE IN SELECTING A PROVIDER . . . . I HAVE BEEN GIVEN ADEQUATE TIME AND THE OPPORTUNITY TO REVIEW THIS ARBITRATION AGREEMENT. I . . . FREELY AND VOLUNTARILY CONSENT TO ALL OF THE TERMS OF THIS ARBITRATION AGREEMENT.

**{8}** After reviewing the admission agreement and its attachments, Ms. Bargman signed the admission agreement, acknowledging, among other things, that she had read the admission agreement and each of its attachments or had each part explained to her. In addition, Ms. Bargman signed the two acknowledgments in the arbitration agreement. Preceding the first acknowledgment was an explanation that the terms of the arbitration agreement would be binding on the resident and, among others, the resident's "family members[.]"

**{9}** After signing the admission and arbitration agreements, Ms. Bargman continued to receive treatment at Canyon for a short period of time. After she was discharged, Ms. Bargman, joined by her husband, Plaintiff Gene Bargman, filed a lawsuit against Canyon,

3

Skilled Healthcare Group, Inc., Skilled Healthcare, L.L.C., and the administrator for Canyon, AnMarie Dvorak (collectively, Defendants). The complaint alleged negligence, misrepresentation, unfair trade practices, and punitive damages counts on behalf of Ms. Bargman and a loss of consortium count on behalf of her husband, all of which allegedly arose out of Ms. Bargman's care at Canyon. Pursuant to Section 44-7A-8(a)(2) of the Arbitration Act, NMSA 1978, §§ 44-7A-1 to -32 (2001), Canyon filed a motion to dismiss and/or stay the litigation and to compel arbitration based on the admission agreement and the arbitration agreement. The district court denied the motion on the ground that the arbitration agreement was substantively unconscionable.

**{10}** Defendants appeal, contending that (1) the district court misapprehended the standards that apply to the analysis of whether an arbitration agreement is substantively unconscionable; (2) application of the relevant standards reveals that the arbitration agreement is substantively conscionable; and (3) in light of the Supreme Court's ruling in *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, 150 N.M. 398, 259 P.3d 803, remand may be appropriate.

**DISCUSSION**

**{11}** We review de novo the denial of a motion to compel arbitration. *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901. Whether a contract is unconscionable presents a question of law that we review de novo. *Id.*

**{12}** We start with controlling New Mexico precedent. *See Rivera*, 2011-NMSC-033; *Cordova*, 2009-NMSC-021; *Figueroa v. THI of N.M. at Casa Arena Blanca, LLC*, 2012-NMCA-___, ___ P.3d ___ (No. 30,477, July 18, 2012); *Ruppelt v. Laurel Healthcare Providers, LLC*, 2012-NMCA-___, ___ P.3d ___ (No. 30,191, Aug. 16, 2012). The appellate briefs in this case were filed before this Court's opinions in *Figueroa* and *Ruppelt* were filed. We held oral argument in this case to permit the parties to discuss *Figueroa* and *Ruppelt*. The parties were asked to focus on whether, under our Supreme Court cases and this Court's cases, (1) there now exists a bright-line, fixed, and inflexible rule that the exception from arbitration of collection claims admittedly most likely to be pursued by the defendant facility are substantively unconscionable because that exception is unreasonably or unfairly one-sided and against New Mexico public policy; or (2) as the case law stands, the issue is to be analyzed and on a case-by-case basis based on evidence presented on the issues of unreasonableness, unfairness, one-sidedness, and public policy.

**{13}** In oral argument, Canyon distinguished what it saw as "narrow" and "nuanced" analytic approaches. The narrow approach sees a virtually irrebuttable presumptive substantive unconscionability resulting from an imbalance that is observable from the face of the arbitration agreement. The nuanced approach involves a case-by-case "holistic" (arbitration agreement as a whole) analysis that recognizes that the parties' rights do not have to be identical and that courts should entertain evidence tending to show that a particular exclusion is not unreasonably or unfairly one-sided. Canyon argued against the

narrow approach and for the nuanced approach. Ms. Bargman agreed that a case-by-case analysis was proper but argued that there was no basis for any further analysis because there was no evidence presented to the district court and thus before this Court on which to engage in any further analysis.

**{14}** In *Cordova*, the lender reserved for itself, for resolution by a court, the judicial foreclosure or repossession remedies and other remedies provided by law. 2009-NMSC-021, ¶ 4. Our Supreme Court held the arbitration clause "void as unconscionable" in that the lender reserved for itself "the exclusive option of access to the courts for all remedies [it was] most likely to pursue against a borrower" and that it was "an inherently one-sided agreement [that was] against New Mexico public policy[.]" *Id.* ¶ 1. As well, in *Rivera*, the lender excepted foreclosure and repossession remedies from arbitration. 2011-NMSC-033, ¶ 53. Our Supreme Court applied the rule that "[c]ontract provisions that unreasonably benefit one party over another are substantively unconscionable" to the arbitration clause at issue. *Id.* ¶¶ 46, 53-54 (internal quotation marks and citation omitted). The Court determined that the lender's "ability under the arbitration clause to seek judicial redress of its likeliest claims while forcing [the borrower] to arbitrate any claim she may have [was] unreasonably one-sided." *Id.* ¶ 53. The Court held that the arbitration clause was "unfairly one-sided and void under New Mexico law" and substantively unconscionable. *Id.* ¶ 54.

**{15}** Recently, this Court filed two opinions relating specifically to the health care industry, *Figueroa* and *Ruppelt*. In *Figueroa*, the health care facility excepted from arbitration guardianship proceedings as well as collection and eviction actions. 2012-NMCA-___, ¶¶ 2, 26. Looking to *Cordova* and *Rivera*, where "[o]ur Supreme Court invalidated arbitration agreements that were unfairly and unreasonably one-sided in favor of the drafter[,]" *Figueroa*, 2012-NMCA-012-___, ¶ 24, we concluded in *Figueroa* that the arbitration agreement was "unreasonably and unfairly one-sided in favor of [the health care facility]." *Id.* ¶ 30. This Court further stated that

> [w]hile we agree that arbitration obligations do not have to be completely equal, and that parties may freely enter into reasonable agreements to exempt certain claims from arbitration, we refuse to enforce an agreement where the drafter unreasonably reserved the vast majority of [its] claims for the courts, while subjecting the weaker party to arbitration on essentially all of the claims that party is likely to bring.

*Id.* Determining that "unconscionability voids a contract when it is unfair and grossly unreasonable, even if otherwise legally enforceable under contract formation principles[,]" *id.* ¶ 34, we affirmed the district court's holding that "the terms of [the] arbitration agreement were unfairly and unreasonably one-sided and thereby, substantively unconscionable." *Id.* ¶ 35.

**{16}** In *Ruppelt*, with a provision similar to those in *Cordova*, *Rivera*, and *Figueroa*, we did not vary the analysis and result. The arbitration agreement in *Ruppelt* excepted from

arbitration the claims of "collections or discharge of residents." 2012-NMCA-___, ¶ 3 (internal quotation marks omitted). As in the forerunners, we determined that the arbitration agreement was unreasonably one-sided and substantively unconscionable. *Id.* ¶ 18.

**{17}** It is noteworthy that in none of the foregoing cases did the defendant drafter of the arbitration provision offer evidence tending to prove that it was not unreasonable or unfair to except certain claims from arbitration even if they were claims most likely to be pursued by the defendant. Nothing in these cases expressly lays down a bright-line, inflexible rule that excepting from arbitration any claim most likely to be pursued by the defendant drafter will void the arbitration clause as substantively unconscionable. As our case law stands, cases should still be examined on a case-by-case basis.

**{18}** As noted earlier, Canyon's arbitration agreement with Plaintiffs provided two exclusions: discharge of residents and collections. Thus, the agreement at issue in this case provided exclusions identical to those that existed in the agreement at issue in *Ruppelt*. *Id.* ¶ 3. Yet in this case, different from *Ruppelt*, the parties acknowledge and agree that, under both federal and state law, resident-discharge-related issues are to be handled in administrative proceedings with notice and a hearing and the right to appeal the decision, thus requiring the exclusion of resident-discharge-related issues from arbitration agreements. 42 C.F.R. § 483.12 (2011); 8.354.2.9 NMAC (11/1/1996) (amended 3/1/2012). Therefore, the parties agree that the focus of our inquiry into the substantive unconscionability issue is limited to whether the collections exclusion renders the arbitration agreement unreasonably or unfairly one-sided.

**{19}** In their briefs, Defendants do not present arguments significantly different from those presented in *Figueroa* and *Ruppelt*. In an effort to distinguish the present arbitration agreement from the agreements at issue in *Rivera*, 2011-NMSC-033, ¶ 3, and *Cordova*, 2009-NMSC-021, ¶ 4, Canyon asserts that the arbitration agreement in this case did not explicitly reserve, solely for itself, the right to go to court to resolve any collections issues. *See Rivera*, 2011-NMSC-033, ¶ 3 (stating that "[a]lthough the arbitration provisions require[d] [the borrower] to arbitrate any claims she may have [had] against [the lender], the arbitration provisions exempt[ed] from binding arbitration certain claims that the [l]ender might have against [the borrower]"); *Cordova*, 2009-NMSC-021, ¶ 4 (explaining that the arbitration agreement "provided that the lender alone had the exclusive and unlimited alternative to seek any judicial remedies it might . . . have . . . in the event of a default by the borrower"). In Canyon's view, the bilateral collections exclusion in the arbitration agreement is substantively conscionable because it enables a resident to pursue collections-related claims against Canyon or, if Canyon initiated a collections proceeding, any corresponding counterclaims. Having considered and rejected similar arguments in *Figueroa* and in *Ruppelt*, we likewise reject Canyon's argument.

**{20}** In both *Figueroa* and in *Ruppelt*, the defendants pointed to the bilateral nature of the arbitration exemptions in an effort to persuade this Court that the respective arbitration agreements were not unreasonably or egregiously one-sided. *See Ruppelt*, 2012-NMCA- __,

6

¶ 10 (explaining that the defendants argued that the arbitration agreement's exemption provision "[was] not unreasonably one-sided because it bilaterally allow[ed] either party to pursue claims regarding collections and discharge of residents in a judicial forum"); *Figueroa*, 2012-NMCA-__, ¶ 28 (explaining that the defendant nursing home argued "that residents' rights under the [arbitration] agreement to bring claims under $2,500 and guardianship proceedings in a judicial forum [were] sufficient to prevent [the] agreement from being egregiously one-sided"). In both cases, this Court rejected the defendants' contentions.

**{21}** In *Figueroa*, we concluded that although the agreement could be construed as granting a resident rights to a judicial forum for certain claims, nevertheless, those rights did not "sufficiently act to remedy the gross disparity that result[ed] from [the d]efendant's reservation of its most likely claims to a judicial forum, while the resident's most likely claims [were] subject to arbitration." 2012-NMCA-__, ¶ 28. And, in *Ruppelt*, we held that "[a]lthough the exemption provision [was] facially bilateral in the sense that it [did] not completely extinguish [the p]laintiff's right to access the courts, in effect this distinction from *Cordova* and *Rivera* is illusory. . . [because c]ommon sense dictates that claims relating to collection of fees and discharge of residents are the types of [claims] that a nursing home, not its resident, is most likely to pursue." *Ruppelt*, 2012-NMCA-__, ¶ 15. In both cases, we concluded that the exclusion from arbitration of the health care facilities' most likely claims, including collections, while excluding access to courts for negligence, the type of claim most likely to be brought by a resident, rendered the arbitration agreements substantively unconscionable. *See Ruppelt*, 2012-NMCA-__, ¶¶ 16, 18; *Figueroa*, 2012-NMCA-__, ¶ 32.

**{22}** Canyon argues that excluding collections claims from arbitration is not unreasonable or unfair, that owing to the "non-complex nature of collections disputes and the small sums typically involved, it is faster and cheaper for a resident—and, Canyon . . . to litigate such claims rather than arbitrate them[.]" Canyon also points to the fact that under the arbitration agreement, it must pay the fees of three arbitrators and, making a reference to non-specific "sums involved" in collections disputes, Canyon argues that it would not be cost-effective for it to pursue arbitration for collections-related claims. Thus, in Canyon's view, the pragmatic effect of requiring arbitration of collections-related disputes would be to deprive Canyon of a remedy when a resident fails to pay for services rendered.

**{23}** None of the assumptions underlying Canyon's argument regarding the reasonableness of the collections exclusion, however, are supported by evidence presented in the district court. Recognizing the lack of evidence, Canyon requested in its appellate briefing that we remand the case for an evidentiary hearing so that it may develop a record related to the collections exclusion and to show why the collections exclusion is not unreasonably or unfairly one-sided and is justified. Ms. Bargman argues against remand, contending that Canyon could have presented evidence in the district court but failed to do so and should not now be heard to seek remand for an opportunity to present evidence. Because at the time this matter was in the district court, *Rivera*, *Figueroa*, and *Ruppelt* had

7

not been decided and the burden of proof was not all that clearly determined, and also because it is unclear that the district court would have considered evidence, we do not agree that Defendants have somehow waived or not preserved its remand position.

**{24}** We agree with Canyon that, under the circumstances in this case, remand is in order for the purpose of allowing Canyon the opportunity to present evidence tending to show that the collections exclusion is not unreasonably or unfairly one-sided such that enforcement of it is substantively unconscionable.

**CONCLUSION**

**{25}** We reverse the district court's order denying Canyon's motion to compel arbitration and remand to the district court for further proceedings consistent with this Opinion.

**{26} IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**LINDA M. VANZI, Judge**

**Topic Index for _Bargman v. Skilled Healthcare Grp., Inc._, No. 31,088**

**APPEAL AND ERROR**
Remand
Standard of Review

**CIVIL PROCEDURE**
Arbitration

**CONTRACTS**
Unconscionable

**REMEDIES**
Arbitration

**TORTS**
Medical Malpractice