This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**MARGARET GRIEGO, DECEASED, BY THE CO-PERSONAL REPRESENTATIVES OF HER PROBATE ESTATE, CELESTINO GRIEGO, JR. AND DANNY I. GRIEGO,**

Plaintiffs-Appellees,

v.                                                                            **NO. 31,777**

**ST. JOHN HEALTHCARE & REHABILITATION CENTER, L.L.C., SKILLED HEALTHCARE GROUP, INC., SKILLED HEALTHCARE, L.L.C., and ADMINISTRATOR T.J. HICKS, JR.,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Clay P. Campbell, District Judge**

Harvey Law Firm, L.L.C.
Jennifer J. Foote
Dusti D. Harvey
Albuquerque, NM

for Appellees

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Sandra L. Beerle
Robert W. Lasater, Jr.
Jocelyn Drennan

Albuquerque, NM

for Appellants

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

**{1}** Defendants appeal from the denial of their motion to dismiss the complaint and compel arbitration in this nursing home action filed by the representatives of the estate of a former resident. We agree with the district court that the arbitration agreement is void for substantive unconscionability as a matter of law, and we affirm.

**BACKGROUND**

**{2}** Because the parties are familiar with the facts of the case, we do not recite those facts here but include them in our analysis below. We briefly note the procedural history that led to this appeal.

**{3}** After the death of Margaret Griego, who had been attacked by another resident at Defendants' nursing home, Plaintiffs in January 2011 filed a complaint alleging negligence, misrepresentation, and a violation of the New Mexico Unfair Practices Act, NMSA 1978, Sections 57-12-1 to -26 (1967, as amended through 2009), related to the terms of the admission contract's arbitration agreement (the Agreement). Defendants responded in February 2011 with a motion to dismiss or stay litigation and compel arbitration. Plaintiffs responded by arguing in part that the Agreement in Mrs.

Griego's admissions contract could not be enforced, because it is procedurally and substantively unconscionable as a matter of law. The district court held hearings in May and September 2011. Both parties submitted proposed findings of fact and conclusions of law before the September hearing, as well as briefs after the hearing. On November 8, 2011, the district court issued its findings of fact, conclusions of law, and an order denying the motion to compel arbitration. This appeal followed.

**DISCUSSION**

{4}     Defendants argue that the district court applied the wrong legal standard for analyzing whether the Agreement is substantively unconscionable. They also contend that the district court unexpectedly shifted the burden of proof to the Defendants and did not allow them the opportunity to meet that burden. We focus on the question of whether the Agreement is substantively unconscionable and whether Defendants met their burden of proof to show that the Agreement was valid, enforceable, and therefore substantively conscionable.

**I.      Standard of Review**

{5}     A district court's denial of a motion to compel arbitration is reviewed de novo. *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901. "Similarly, whether the parties have agreed to arbitrate presents a question of law, and we review the applicability and construction of a contractual provision

3

requiring arbitration de novo." *Id.* (internal quotation marks and citation omitted). "By both statute and case law, we review whether a contract is unconscionable as a matter of law." *Id.*

## II.     The Agreement

{6}     The standard arbitration form used by Defendants, and signed by Mrs. Griego's legal representative, requires binding arbitration for some disputes and includes the Agreement in question, in particular this clause:

> By signing [the] Agreement, the parties relinquish their right to have any and all disputes associated with [the] Agreement and the relationship created by the Admission Agreement and/or the provision of services under the Admission Agreement (including, without limitation, claims for negligent care against Arbor Brook or any of its employees, managers, or members) . . . resolved through a lawsuit, namely by a judge, jury[,] or appellate court, except to the extent that New Mexico law provides for judicial action in arbitration proceedings. [The] Agreement shall not apply to disputes pertaining to collections or discharge of residents.

The Agreement requires all disputes, brought by either party, to be resolved through arbitration except for those involving the discharge of residents and for collections. The Agreement thus precludes any action in district court for all claims that a resident is most likely to bring—negligent care—and reserves for Defendants a judicial forum involving the claims they are most likely to bring—issues of discharge and collections. *See Ruppelt v. Laurel Healthcare Providers, LLC*, 2013-NMCA-014, ¶ 16, 293 P.3d 902, *cert. denied*, 2012-NMCERT-012.

**{7}** The district court's two-hour hearing in September 2011 focused mainly on the question of whether the Agreement was *procedurally* unconscionable. The issue of substantive unconscionability was raised early in the litigation by each parties' briefs in support of and in opposition to the motion to dismiss and at a brief hearing in May. In addition, the parties were invited, before and after the September hearing, to submit proposed findings of fact and conclusions of law that examined the issue of substantive unconscionability, and each party also briefed that issue after the hearing.

**{8}** The district court ruled that the Agreement was not procedurally unconscionable, and that ruling is not challenged by Plaintiffs. The court then ruled that the Agreement was substantively unconscionable. The district court's decision relied, in part, on this Court's opinion in *Strausberg v. Laurel Healthcare Providers, LLC*, 2012-NMCA-006, 269 P.3d 914, *cert. granted*, 2012-NMCERT-001. The parties agree that the only issue before us is the substantive unconscionability of the Agreement.

**{9}** As a threshold matter, Defendants contend that the district court denied them a fair opportunity to meet their burden of proof on conscionability. We therefore begin by reviewing the burden of proof.

**III. Burden of Proof**

**A. The *Strausberg* Opinion**

**{10}** The burden of proof in nursing home arbitration cases was confirmed by this Court in November 2011—after all arguments, findings of fact and conclusions of law, and briefs in this case were submitted below to the district court, but before the court issued its order. *See Strausberg*, 2012-NMCA-006, ¶ 20 (holding that when a nursing home requires an arbitration agreement for admission to the home and the patient contends that the agreement is unconscionable "the nursing home has the burden of proving that the arbitration agreement is not unconscionable"). The district court, after having surmised at the September hearing that Plaintiffs had the burden of proving that the contract was substantively unconscionable, concluded instead that Defendants had the burden of proving that the contract clause was valid and enforceable, citing *Strausberg*, which had been filed four days before the district court's order was issued.

**{11}** Defendants now contend that they were unable to "meet [their] newly-imposed burden of disproving the alleged substantive unconscionability" of the Agreement because they did not have the benefit of the "new rule" handed down by *Strausberg*. Defendants urge us to remand the case to the district court to allow them to meet their burden of disproving the allegations of substantive unconscionability. We reject Defendants' contention as well as the request for remand.

{12} We did not establish a "new rule" when we held in *Strausberg* that a nursing home has the burden of proving that an arbitration agreement is valid and enforceable when challenged to do so by a plaintiff who is responding to a defendant's motion seeking to compel arbitration.

{13} New Mexico case law has been well established that principles of contract law apply to arbitration agreements. Under the New Mexico Arbitration Act, a legally enforceable contract is a prerequisite to arbitration. *DeArmond v. Halliburton Energy Servs., Inc.*, 2003-NMCA-148, ¶ 9, 134 N.M. 630, 81 P.3d 573. Moreover, a party relying on a contract has the burden to prove it is legally valid and enforceable. *Id.*; *see also Corum v. Roswell Senior Living, LLC,* 2010-NMCA-105, ¶ 3, 149 N.M. 287, 248 P.3d 329 (stating that the party attempting to compel arbitration carries the burden of demonstrating that the arbitration agreement is valid). It is a "fundamental principle that arbitration is a matter of contract[.]" *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 16, 150 N.M. 398, 259 P.3d 803 (internal quotation marks and citation omitted). Courts must place arbitration agreements "on an equal footing with other contracts . . . and enforce them according to their terms." *Id.* (alteration in original) (internal quotation marks and citation omitted). The *Strausberg* court underscored that these contract rules "are well embedded in New Mexico jurisprudence." 2012-NMCA-006, ¶ 16. *Strausberg* further pointed out that "a

motion to compel arbitration is essentially a suit for specific performance of an agreement to arbitrate[,]" and "a party seeking specific performance has the burden of proving grounds for such relief." *Id.* (internal quotation marks and citation omitted). Plaintiffs' claim that the clause is substantively unconscionable or invalid does not relieve Defendants of their burden to prove that they have a valid contract that may be enforced. *Strausberg* merely confirmed New Mexico case law regarding the burden of proof in such a situation involving a nursing home seeking to compel arbitration.

**B.      Defendants Were Given the Opportunity to Meet Their Burden of Proof**

**{14}**      It was sufficiently clear during litigation that the intertwined issues of substantive unconscionability and the validity of the Agreement were squarely before the district court from early on in the proceedings.  After Plaintiffs filed their complaint, Defendants responded with a motion to either dismiss or stay the litigation and to compel arbitration.  The unconscionability argument was raised in Plaintiffs' response to Defendants' motion. Defendants addressed Plaintiffs' argument in their March 28 reply brief.  Defendants also argued the issue in their proposed conclusions of law submitted to the court before the September 2011 evidentiary hearing.  Finally, at the evidentiary hearing, the district court told the parties:

> [W]hat we're going to do is you are going to submit new findings of fact
> and conclusions of law . . . telling me where to find support for your

8

proposed findings of fact and conclusions of law. . . . I mean, I want you to walk me through, from your perspective, what the factors are that I'm supposed to consider with respect to procedural unconscionability, *with respect to substantive unconscionability*. . . . And you're going to have to cover the burden of proof." (emphasis added).

The court then opined about its theory of the burden of proof, telling Plaintiffs' attorney, "I'll just suggest . . . that you've got the burden of persuasion on that one." After a discussion of basic contract law principles, the court continued, "[s]o that would seem to suggest, just from a common-sense perspective, that it's not [Defendants'] burden of proof to disprove procedural unconscionability and substantive unconscionability. I'm pretty sure the law of contracts suggest[s] otherwise." The court concluded by telling Plaintiffs' attorney that "you've got the burden of persuasion if you want me to shift the burden of proof to [Defendants]." However, turning to Defendants' attorney, the court added, "obviously, since she's raised it, my two cents would be to include that in your legal conclusions, as well."

{15}     In order to succeed in their motion to dismiss and to compel arbitration, Defendants had to prove that the parties had a valid agreement to arbitrate. Subsumed within that showing of validity is the need to refute the claim that the agreement is substantively unconscionable. *See Strausberg*, 2012-NMCA-006, ¶ 16. Along those lines, because Plaintiffs raised substantive unconscionability, Defendants were required to put forth evidence showing that the Agreement was valid, or in other

9

words, substantively conscionable. And in fact, Defendants had multiple opportunities—in two sets of briefs, in two sets of findings of fact and conclusions of law, and during the evidentiary hearing—to meet their burden of proof.

{16} Furthermore, if Defendants felt blind-sided by *Strausberg*'s declaration that nursing homes have the burden of proof in arbitration cases dealing with unconscionability, they had another opportunity, as they admit, to make their arguments and present evidence to the district court by filing a motion for reconsideration. *See* Rule 1-059(A) NMRA (stating that "the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment"). We see no reason to give Defendants another chance to present the arguments they had adequate opportunity to make below.

{17} We now turn to the question before us, and we begin by reviewing recent New Mexico Supreme Court cases that set forth the analysis to be used when reviewing arbitration agreements for substantive unconscionability.

## IV.  New Mexico Supreme Court's Jurisprudence on Arbitration Clauses

{18}  Agreements to arbitrate may "be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rivera*, 2011-NMSC-033, ¶ 17 (internal quotation marks and citation omitted).  "Unconscionability is an equitable doctrine, rooted in public policy, which allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party." *Cordova*, 2009-NMSC-021, ¶ 21. The doctrine covers both procedural and substantive unconscionability. *Id.* "[T]here is no absolute requirement in our law that both must be present to the same degree or that they both be present at all." *Id.* ¶ 24.  We concern ourselves in the case before us with only substantive unconscionability.

{19}  When analyzing an arbitration agreement for substantive unconscionability, we are concerned with "the legality and fairness of the contract terms themselves" and we "focus[] on such issues as whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns." *Id.* ¶ 22.  "Contract provisions that unreasonably benefit one party over another are substantively unconscionable." *Id.* ¶ 25.  Our Supreme Court has concluded that it is "unreasonably one-sided" for a company to have the "ability . . . to seek judicial redress of its likeliest claims while forcing [a

customer] to arbitrate any claim [he or] she may have." *Rivera*, 2011-NMSC-033, ¶ 53; *see also Cordova*, 2009-NMSC-021, ¶¶ 26-27.

{20}  *Rivera* and *Cordova* set the standard for unconscionability of contracts involving lenders imposing arbitration agreements on borrowers. Last year, we applied those two decisions and their rationales to the universe of nursing home arbitration cases. We turn now to those opinions.

**V.      Recent Court of Appeals Precedent**

{21}  Three of this Court's 2012 opinions have clarified our jurisprudence regarding substantive unconscionability in the realm of nursing home arbitration agreements. We review them for guidance in our analysis.

{22}  This court has adhered to our Supreme Court's doctrine of unconscionability by stating clearly that "we refuse to enforce an agreement where the drafter unreasonably reserve[s] the vast majority of his claims for the courts, while subjecting the weaker party to arbitration on essentially all of the claims that party is likely to bring." *Figueroa v. THI of N.M.*, 2013-NMCA-___, ¶ 30, ___ P.3d ___ (No. 30,477, July 18, 2012), *cert. denied*, 2012-NMCERT-010. "While no single, precise definition of substantive unconscionability can be articulated, substantive unconscionability broadly refers to whether the material terms of a contract are patently unfair and more beneficially one-sided in favor of the more powerful party."

12

*Ruppelt*, 2013-NMCA-014, ¶ 18, ___ P.3d ___.   Substantive unconscionability requires a focus on fairness, not complete one-sidedness.  *Id.* ¶ 14.

**A.     *Figueroa***

{23}     In *Figueroa*, the nursing home had excluded from the arbitration requirement matters involving guardianship proceedings as well as collection and eviction actions, all of which either party was entitled to bring.  2013-NMCA-___ ¶¶ 2, 26.  We proclaimed "that the inference that guardianship, collection, and eviction proceedings would be the most likely claims of the nursing home is self-evident." *Id.* ¶ 31.  While we acknowledged that "the arbitration agreement [could] be construed to grant some rights to a judicial forum to the resident," we stated that "these rights to a judicial forum do not sufficiently act to remedy the gross disparity that results from [the nursing home's] reservation of its most likely claims to a judicial forum, while the resident's most likely claims are subject to arbitration." *Id.* ¶ 28.  This court noted that

> [the d]efendant cannot avoid the equitable doctrine of unconscionability by drafting an agreement that reserves its most likely claims for a judicial forum, and provides some exemptions from arbitration to the resident so that there is some appearance of bilaterality, when that exemption is completely meaningless in practicality because the resident would rarely, if ever, raise that type of claim against the nursing home.

*Id.* ¶ 30.  We concluded that the arbitration agreement in question was "unreasonably and unfairly one-sided in favor of" the nursing home.  *Id.*

**B.     *Ruppelt***

{24} In *Ruppelt*, as in the case before us, the arbitration clause at issue exempted matters involving discharge of residents and collections from the arbitration process. 2013-NMCA-014, ¶ 3. There, we reiterated that "substantive unconscionability requires a focus on fairness, not complete one-sidedness" and stated that "[c]ommon sense dictates that claims relating to collection of fees and discharge of residents are the types of remedies that a nursing home, not its resident, is most likely to pursue." *Id.* ¶¶ 14, 15. We concluded that "although the exemption provision may facially appear to apply evenhandedly, its practical effect unreasonably favors [the d]efendants, and the provision's bilateral appearance is inaccurate." *Id.* ¶ 18.

{25} While *Figueroa* and *Ruppelt* find substantive unconscionability in nursing home arbitration agreements that permit the nursing home to pursue its most likely claims, such as discharge actions and collections, in a court of law, we have stopped short of suggesting that such exemptions represent per se unconscionability. *See Bargman v. Skilled Healthcare Group, Inc.*, 2013-NMCA-006, ¶17, 292 P.3d 1, *cert. granted*, 2012-NMCERT-012 (stating that cases should still be examined on a case-by-case basis). In *Ruppelt*, the defendants declined an invitation from this Court to remand the matter for additional factual development of the argument that the arbitration agreement's exemptions were not unconscionable. 2013-NMCA-014, ¶17. However, we refused to "rule out the possibility that probative evidence could be

14

offered in this type of case" rebutting a plaintiff's claim that exemptions for discharge actions and collections are unfairly one-sided. *Id.*

## C.   *Bargman*

{26}   Indeed, less than two months after *Ruppelt* was filed, we reversed a district court's order denying a nursing home's motion to compel arbitration and remanded the case. *Bargman*, 2013-NMCA-006, ¶ 24. In *Bargman*, as in the case before us, the arguments were narrowed to just the issue of the collections exemption. *Id.* ¶ 18. As Defendants do here, the nursing home in *Bargman* argued to this Court that the collections exemption was not one-sided because (1) the arbitration agreement requires the nursing home to pay all arbitration fees, meaning it would not be cost-effective for it to pursue arbitration to collect smaller fee amounts, and (2) the non-complex nature of collections disputes makes it more efficient to litigate such claims rather than submit them to arbitration. *Id.* ¶ 22. And as Plaintiffs do here, the plaintiffs in *Bargman* argued against remand, contending that the defendants had failed to make those arguments to the district court below. *Id.* ¶ 23. We concluded

in *Bargman* that

> [b]ecause at the time this matter was in the district court, *Rivera*, *Figueroa*, and *Ruppelt* had not been decided and the burden of proof was not all that clearly determined, and also *because it is unclear that the district court would have considered evidence*, we do not agree that [the d]efendants have somehow waived or not preserved [their] remand position.

*Id.* (emphasis added).

{27}    In the case before us, by contrast, as discussed in Section III, Defendants were put on reasonable notice that they had the burden of proof to present evidence showing that the Agreement was valid and enforceable. As previously noted, while this Court's opinions in *Figueroa* and *Ruppelt* came after the proceedings below, the parties did have the benefit of the *Rivera* decision and its admonition that a defendant's "ability under the arbitration clause to seek judicial redress of its likeliest claims while forcing [a plaintiff] to arbitrate any claim [he or] she may have is unreasonably one-sided." *Rivera*, 2011-NMSC-033, ¶ 53. Defendants were on alert that they had the burden to bring forth evidence showing that the discharge and the collections exemptions were valid and enforceable.

**VI.    Whether the Agreement Is Substantively Unconscionable**

{28}    The ultimate question before us, then, is whether, as a matter of law, the Agreement is unfairly one-sided and therefore substantively unconscionable.

16

{29} As the nursing home in *Bargman* did, Defendants here note that the discharge exclusion is necessitated by the requirements of state and federal law that dictate such matters be addressed in administrative hearings subject to judicial review. Plaintiffs do not dispute that assertion. That leaves us with the issue of the exemption for collections.

{30} Defendants rely on legal arguments in the absence of evidence below. They note that the collections exemption is bilateral, an observation rejected as irrelevant by both of New Mexico's appellate courts. *See, e.g., Figueroa*, 2013-NMCA-___ ¶ 30 (acknowledging "there [was] some appearance of bilaterality" but noting that the "exemption is completely meaningless in practicality because the resident would rarely, if ever, raise that type of claim against the nursing home"). Next, Defendants ask us to "imagine a scenario" in which a resident may pursue litigation against a nursing home over a collections matter, for example, being overcharged for services provided. However, Defendants offered no supporting evidence below to show how often such an imagined scenario has taken place or even how likely it would be. Defendants also contended below that any collections dispute brought to district court would be subject to mandatory court-annexed arbitration if it involved a sum less than $25,000. As Plaintiffs note, such an arbitration proceeding would be non-binding, in contrast with the Agreement's binding nature, and it would not preclude Defendants

17

from fully litigating claims of less than $10,000 in Metropolitan Court. *See* LR Rule 2-603 §§ II, V(D) NMRA; NMSA 1978, § 34-8A-3(A)(2) (2001).

{31}     Defendants also contemplate, without citation to the record, a situation in which the cost of hiring three arbitrators to resolve a collections claim would exceed the amount in dispute. At no point below or on appeal do Defendants offer any evidence that would tend to show the costs involved in a collection dispute or how often residents pursue claims compared with how often nursing homes do. Such generalized assertions by counsel are not evidence. *See Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence.").

{32}     We are left with an undisturbed line of recent case law—beginning with *Cordova* and *Rivera* in our Supreme Court and continuing with last year's cases in this Court—asserting unwaveringly that we find substantive unconscionability in an unreasonably one-sided arbitration agreement that gives a company which drafts the agreement the ability to seek judicial redress of its likeliest claims while forcing a customer, who is the weaker party, to arbitrate any claim he or she may have. *See Rivera*, 2011-NMSC-033, ¶ 53; *Cordova*, 2009-NMSC-021, ¶¶ 26-27; *Figueroa*, 2013-NMCA-___, ¶ 30; *Ruppelt*, 2013-NMCA-014, ¶¶ 16, 18; *Bargman*, 2013-

NMCA-006, ¶ 12-15. Residents or their representatives are most likely to bring claims involving negligence on the part of the nursing home. *Figueroa*, 2013-NMCA-___, ¶ 32; *Ruppelt*, 2013-NMCA-014, ¶ 16. And no matter how many legal arguments—unsupported by evidence—that Defendants make to try to show that the collections exemption is not as one-sided as previous appellate opinions suggest, the unrebutted contention remains that collections claims are still the type of dispute a nursing home is most likely to bring against a resident and that a resident is least likely to bring. *Rivera*, 2011-NMSC-033, ¶ 53; *Figueroa*, 2013-NMCA-___, ¶ 31; *Ruppelt*, 2013-NMCA-014, ¶ 15.

{33} Here, Defendants imposed an arbitration scheme that forced residents to submit their most likely claims to arbitration while reserving for themselves the right to litigate in a court of law the collections claims that they were most likely to bring. Defendants had the opportunity but failed to present any evidence below that would tend to prove that the collections exemption was not "unreasonably and unfairly one-sided" in its own favor. As such, they failed to meet their burden of showing that the Agreement was valid and enforceable. Therefore, it was not error for the district court to deny Defendants' motion to dismiss and compel arbitration.

**CONCLUSION**

{34}    For the foregoing reasons, we affirm the ruling of the district court, and we remand for proceedings consistent with this Opinion.

{35}    **IT IS SO ORDERED.**

_____

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**CYNTHIA A. FRY, Judge**