**Certiorari Granted, June 2, 2010, No. 32,340**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-046**

**Filing Date: February 18, 2010**

**Docket No. 28,691**

**KIM RIVERA,**

      **Plaintiff-Appellant,**

**v.**

**AMERICAN GENERAL FINANCIAL
SERVICES, INC., a/k/a AMERICAN
GENERAL FINANCE, INC.,
AMERICAN SECURITY INSURANCE
COMPANY, a/k/a AMERICAN SECURITY
GROUP, LINDA CALLAHAN, and JANE DOE,**

      **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
William F. Lang, District Judge**

Martinez & Hart, P.C.
Bruce E. Thompson
Albuquerque, NM

for Appellant

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Charles K. Purcell
Albuquerque, NM

for Appellees

**OPINION**

**WECHSLER, Judge.**

1

**{1}** Plaintiff Kim Rivera appeals from the district court's grant of Defendants' motion to compel arbitration and stay proceedings. Plaintiff raises five issues on appeal: (1) whether the Arbitration Provisions of the Loan Agreement (the agreement) between Plaintiff and Defendant American General Financial Services, Inc. (American General) were substantively unconscionable; (2) whether the Arbitration Provisions were procedurally unconscionable; (3) whether American General's promise to arbitrate was illusory; (4) whether it was inappropriate for the district court to grant equitable relief to Defendants when Defendants came to the district court with unclean hands; and (5) whether Defendant American Security Insurance Company (American Security) had a right to enforce the Arbitration Provisions of the agreement. We affirm.

## BACKGROUND

**{2}** On August 15, 2000, Plaintiff entered into an agreement for a title loan with American General in the amount of $8474.90. The agreement provided that all "Covered Claims" would be resolved through arbitration at the request of either party. The agreement defined "Covered Claims" to include "any and all claims and disputes not expressly excluded by the Arbitration Provisions." Among the claims that were excluded were "[American General's] self-help or judicial remedies including, without limitation, repossession or foreclosure, with respect to any property that secures [the loan]." The agreement also provides that if Plaintiff defaulted, American General could, "to the extent not prohibited by law, exercise any other rights [American General] may have at law or equity or under [the loan note] or any instrument securing [the loan note], such as, among others, suing [Plaintiff] for amounts owed or repossessing any Property given as security."

**{3}** As a condition of the loan, Plaintiff was required to maintain insurance for the full value of the vehicle. Plaintiff acquired such insurance through American Security, an affiliate of American General. The premium, which was added to the principal of the loan, covered the vehicle from August 22, 2000 until August 22, 2001.

**{4}** Plaintiff alleges that, on September 3, 2000, her truck was involved in an accident that rendered the vehicle inoperable. Plaintiff claims that she made several attempts to file a claim with American Security based on this loss but that American Security was unresponsive. Although the precise time line is unclear from the record on appeal, it appears that Plaintiff continued to make payments to American General for some time before defaulting on the loan. Thereafter, American General made several collection attempts before eventually closing the loan and returning the vehicle title to Plaintiff in August 2004.

**{5}** On September 1, 2006, Plaintiff sued Defendants. Plaintiff's amended complaint contained ten claims, including breach of contract and fraud, along with violations of the Fair Credit Reporting Act, the Insurance Practices Act, and the Unfair Trade Practices Act. Defendants removed the case to federal district court, and the federal court remanded the case to state court after Plaintiff voluntarily dismissed the federal law claims. Defendants filed a motion to compel arbitration, arguing that the claim that Plaintiff was attempting to

resolve was a Covered Claim under the Arbitration Provisions. The district court granted Defendants' motion on April 9, 2008. Plaintiff appeals.

## SUBSTANTIVE UNCONSCIONABILITY OF THE ARBITRATION PROVISIONS

**{6}** Plaintiff argues that the Arbitration Provisions are substantively unconscionable because the right to compel arbitration is impermissibly one-sided. Plaintiff contends that the Arbitration Provisions would allow American General to compel arbitration to resolve any dispute that Plaintiff might raise but would not allow Plaintiff a similar right to compel arbitration of collection and foreclosure actions that Defendants might bring against Plaintiff. Plaintiff further contends that because of this unconscionability, the Arbitration Provisions are unenforceable.

**{7}** "We review an order to compel arbitration de novo when it appears that the district court determined as a matter of law that an agreement to arbitrate existed." *Medina v. Holguin*, 2008-NMCA-161, ¶ 7, 145 N.M. 303, 197 P.3d 1085. A valid agreement to arbitrate is a prerequisite to compelling arbitration under the Federal Arbitration Act. *Salazar v. Citadel Commc'ns Corp.*, 2004-NMSC-013, ¶ 8, 135 N.M. 447, 90 P.3d 466. An agreement to arbitrate is valid and enforceable unless a provision of generally applicable state contract law would allow such an agreement to be revoked. *See Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable [to arbitration agreements] *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."), *abrogation on other grounds recognized by Casarotto v. Lombardi*, 886 P.2d 931 (Mont. 1994).

**{8}** Plaintiff's argument is essentially that state contract law regarding unconscionability renders the Arbitration Provisions unenforceable. Unconscionability is an equitable doctrine that allows courts to invalidate contracts that are unreasonably favorable to one party. *Guthmann v. La Vida Llena*, 103 N.M. 506, 510, 709 P.2d 675, 679 (1985), *overruled on other grounds by Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 31, 146 N.M. 256, 208 P.3d 901. When evaluating whether to apply the doctrine, courts can analyze contracts from both a substantive and a procedural perspective. *Fiser v. Dell Computer Corp.*, 2008-NMSC-046, ¶ 20, 144 N.M. 464, 188 P.3d 1215. Although the presence of both forms of unconscionability increases the likelihood of a court invalidating the agreement, there is no strict requirement that both forms must be present. *See id.* ¶ 22 (invalidating an arbitration clause based on substantive unconscionability alone).

**{9}** The Arbitration Provisions of the agreement state that:

> [Plaintiff] or [American General] can elect to have "Covered Claims". . . resolved by binding arbitration in accordance with the Arbitration Provisions, except for matters not covered by arbitration . . . .
>
> "Covered Claims" are any and all claims and disputes not expressly excluded

3

by the Arbitration Provisions . . . includ[ing], without limitation, all claims and disputes arising out of [the] loan from [American General] . . . .

Notwithstanding any other terms of the Arbitration Provisions, [Plaintiff] cannot elect to arbitrate [American General]'s self-help or judicial remedies including, without limitation, repossession or foreclosure, with respect to any property that secures [the loan]. In the event of a default under those transactions, [American General] can enforce its rights to [Plaintiff's] property in court or as otherwise provided by law, and [Plaintiff] cannot require that [American General's] actions be arbitrated.

Another provision in the agreement states that, in the event of Plaintiff's defaulting on the loan, American General may,

to the extent not prohibited by law, exercise any other rights [American General] may have at law or equity or under [the loan note] or any instrument securing [the loan note], such as, among others, suing [Plaintiff] for amounts owed or repossessing any Property given as security.

Plaintiff contends that these two passages, read together, create a completely one-sided right to compel arbitration for American General because American General retains the right to compel arbitration of any claim that Plaintiff might bring concerning the agreement while Plaintiff does not have the right to compel arbitration of any claims that American General might bring. We agree with Plaintiff that completely one-sided arbitration provisions are substantively unconscionable under New Mexico law. *Cordova*, 2009-NMSC-021, ¶¶ 32, 41. In *Cordova*, our Supreme Court held that an agreement obligating the borrower to submit her claims to binding arbitration but not obligating the lender was substantively unconscionable because the agreement granted rights that were impermissibly one-sided. *Id.* ¶¶ 26, 27. However, unlike the agreement at issue in *Cordova*, the agreement in this case is not completely one-sided in favor of the lender, and we conclude that the Arbitration Provisions are not substantively unconscionable.

**{10}** The Arbitration Provisions allow either party to compel arbitration of any claim or dispute that might arise with the exception of claims that American General might bring with respect to its security interest in the property securing the loan—that is, Plaintiff's truck. This exception does give American General greater access to the courts for the resolution of actions that American General could bring. But, different from the agreement in *Cordova*, the agreement in this case still allows Plaintiff to compel arbitration of disputes about the loan note itself. For example, neither a suit for money damages in default nor a deficiency suit following an Article 9 sale of the truck is part of this exception to Plaintiff's right to compel arbitration.

**{11}** Moreover, although the section of the agreement labeled "DEFAULT" reserves American General's right to sue for amounts owed in the event of default, we do not read

4

this section of the agreement as creating an additional exception to the Arbitration Provisions. Rather, when we read this provision of the agreement together with the other provisions of the agreement, a suit for amounts owed on default would still be a "Covered Claim" within the meaning of the Arbitration Provisions. *See Nearburg v. Yates Petroleum Corp.*, 1997-NMCA-069, ¶ 28, 123 N.M. 526, 943 P.2d 560 ("In interpreting a contract, the court must consider the contract as a whole and give significance to each part."). Because Covered Claims are subject to Plaintiff's right to compel arbitration, Plaintiff would have the right to bring a motion in the forum court to have the suit resolved by binding arbitration. Thus, Plaintiff retains significant rights to compel arbitration, and the Arbitration Provisions are not impermissibly one-sided.

**{12}** Arbitration provisions can nonetheless be unconscionable even if they leave each party with some right to compel arbitration. *See, e.g.*, *Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003-NMSC-011, ¶¶ 12-14, 133 N.M. 661, 68 P.3d 901 (holding that an agreement to arbitrate was unconscionable when both parties retained a right to de novo review in court of awards over a certain amount because that provision unreasonably favored the insurance company). In this case, the right to compel arbitration is asymmetrical because Plaintiff is not free to compel arbitration of disputes over American General's interest in the truck that secures the loan. Our courts have not addressed the issue of whether this limited exception within an agreement to arbitrate makes such an agreement substantively unconscionable. Those states that have addressed such exceptions have held that those exceptions do not offend public policy. *See Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 338, 343 (Ky. Ct. App. 2001) (holding that agreement to arbitrate containing an exception for judicial and extra-judicial rights of secured creditor in mobile home was not substantively unconscionable); *Walther v. Sovereign Bank*, 872 A.2d 735, 748-49 (Md. 2005) (holding that the arbitration provision of a mortgage that preserved lender's judicial foreclosure rights was not substantively unconscionable); *Delta Funding Corp. v. Harris*, 912 A.2d 104, 115-16 (N.J. 2006) (same); *Lackey v. Green Tree Fin. Corp.*, 498 S.E.2d 898, 905 (S.C. Ct. App. 1998) (holding that arbitration agreements in contracts securing manufactured homes and home improvements that reserved secured party's right to foreclose on the homes were not substantively unconscionable).

**{13}** For two reasons, we also do not believe that the exception in this case exempting the right to pursue the collateral from arbitration makes the agreement substantively unconscionable. First, judicial actions for foreclosure and repossession are highly regulated by the statutory provisions governing secured transactions of the Uniform Commercial Code. *See* NMSA 1978, § 55-9-207 (2005) (describing rights and duties of secured party in control of collateral); NMSA 1978, §§ 55-9-601 to -624 (2001, as amended through 2005) (describing the rights of a secured creditor in the event of default). These actions therefore generally proceed quickly through the courts and provide extra protections concerning the manner in which the collateral may be disposed. *See* §§ 55-9-601 to -624 (describing the rights and duties of secured creditor with respect to collateral in the event of default); *see also Conseco*, 47 S.W.3d at 343 (stating the greater protections statutorily provided for secured transactions that protect both parties and streamline the litigation procedures);

5

*Lackey*, 498 S.E.2d at 905 (stating that Kentucky provisions of the Uniform Commercial Code comparable to those of New Mexico are designed to minimize secured creditors' exposure to business risks by providing quick and easy processes for vindicating secured creditors' rights in collateral). Second, without access to these judicial and extra-judicial procedures, American General would lose many of the statutory protections it enjoyed as a secured creditor. The exception in the Arbitration Provisions for these remedies merely restores to American General the advantages of a secured creditor to which it would have been entitled without any agreement to arbitrate. As a result, the Arbitration Provisions that preserve American General's judicial and extra-judicial rights in the collateral of the loan do not offend public policy. The Arbitration Provisions are not substantively unconscionable.

**PROCEDURAL UNCONSCIONABILITY OF THE ARBITRATION PROVISIONS**

**{14}**    Plaintiff next argues that the Arbitration Provisions are procedurally unconscionable. Plaintiff contends, among other things, that the contract was a contract of adhesion. This argument is the only argument concerning procedural unconscionability that Plaintiff raised in the district court. To the extent that Plaintiff argues other bases for invalidating the contract for procedural unconscionability, Plaintiff has failed to preserve those arguments. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked."); *State v. Silva*, 2008-NMSC-051, ¶ 9, 144 N.M. 815, 192 P.3d 1192.

**{15}**    The test for whether a contract is an adhesion contract consists of three parts.

> First, the agreement must occur in the form of a standardized contract prepared or adopted by one party for the acceptance of the other. Second, the party proffering the standardized contract must enjoy a superior bargaining position because the weaker party virtually cannot avoid doing business under the particular contract terms. Finally, the contract must be offered to the weaker party on a take-it-or-leave-it basis, without opportunity for bargaining.

*Guthmann*, 103 N.M. at 509, 709 P.2d at 678 (citations omitted). In order to satisfy the first prong of the test for adhesion, a party must demonstrate either that the other party has a monopoly on that type of contract or that all contracts for such services within the geographic area contain substantially identical terms. *See id.* Plaintiff has offered no evidence tending to prove either that American General has a monopoly on title loans in New Mexico or that Plaintiff would not be able to get a title loan under different terms through a different lender. Although Plaintiff asserts that she had no choice but to enter into an agreement under the terms presented by American General, she does not support this assertion with any evidence. *See State v. Clifford*, 117 N.M. 508, 513, 873 P.2d 254, 259 (1994) (holding that mere reference to a claimed error in a conclusory statement was insufficient to raise the issue on appeal). The agreement fails the first prong of the

6

*Guthmann* test and is therefore not a contract of adhesion.

**FAILURE OF CONSIDERATION**

**{16}** Plaintiff further argues that the agreement to arbitrate was an illusory promise. Plaintiff's argument is essentially that there was a failure of consideration for Plaintiff's promise to allow American General to compel arbitration of her claims against it. Plaintiff argues that American General made an illusory promise to submit claims it might have to binding arbitration in exchange for Plaintiff's real promise to submit her claims against American General to binding arbitration. In support of her arguments, Plaintiff cites to a line of cases in which New Mexico courts have held that promises to arbitrate are illusory when one party retains the right to modify the agreement to arbitrate at will. *See, e.g.*, *Salazar*, 2004-NMSC-013, ¶ 11; *Heye v. Am. Golf Corp.*, 2003-NMCA-138, ¶ 15, 134 N.M. 558, 80 P.3d 495.

**{17}** As discussed above, the promise to arbitrate was mutual because both sides gave up some legal right to pursue their claims in court. American General had no right under the agreement to modify the Arbitration Provisions in order to prevent Plaintiff from compelling arbitration of Covered Claims. Therefore, the agreement in this case is quite different from one in which one party retains a unilateral right to modify the agreement at any time. Although the allocation of the right to compel arbitration in the agreement is arguably asymmetrical, there is nothing in the agreement that allows American General to alter the agreement to arbitrate Covered Claims it brings against Plaintiff.

**{18}** There is no requirement that promises of the parties to an agreement must mirror each other. *See In re Estate of Duncan v. Kinsolving*, 2003-NMSC-013, ¶ 21, 133 N.M. 821, 70 P.3d 1260 ("[I]f the performances or promises on one side fulfill the legal requirements of consideration, they will support any number of counterpromises on the other." (internal quotation marks and citation omitted)). American General promised to submit claims for money damages to an arbitrator if Plaintiff so requested. This promise to arbitrate satisfies the requirements of consideration and therefore supports Plaintiff's more expansive promise to submit her claims against American General to arbitration. Because American General was bound by its promise to submit Covered Claims to arbitration, the promise was not illusory.

**CLEAN HANDS DOCTRINE**

**{19}** Plaintiff further argues that Defendants are barred from compelling arbitration by the "clean hands" doctrine. The doctrine of "clean hands" is an equitable doctrine designed to prevent one party from receiving equitable relief in the courts when that party is responsible for the other party's failure to perform on the contract. *Magnolia Mountain Ltd. P'ship v. Ski Rio Partners, Ltd.*, 2006-NMCA-027, ¶ 36, 139 N.M. 288, 131 P.3d 675. Because Plaintiff did not ask the district court for relief under the "clean hands" doctrine, she has not preserved the issue for our review. *See* Rule 12-216(A); *Silva*, 2008-NMSC-051, ¶ 9. As

such, we will not consider her arguments.

## AMERICAN SECURITY'S RIGHT TO ENFORCE THE ARBITRATION PROVISIONS

**{20}** Finally, Plaintiff contends that American Security does not have a right to enforce the Arbitration Provisions because American Security was not a party to the agreement and because the agreement between Plaintiff and American General did not grant American Security the right to enforce the Arbitration Provisions. Although we agree that American Security was not a party to the agreement, American Security was an intended third-party beneficiary of the Arbitration Provisions and is therefore entitled to enforce them against Plaintiff. *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (observing that a nonsignatory to an arbitration agreement may compel arbitration when the nonsignatory is an intended third party beneficiary of the contract that contains the arbitration agreement).

**{21}** "A third party may be a beneficiary of [a] contract, and as a beneficiary may have an enforceable right against a party to a contract." *Fleet Mortgage Corp. v. Schuster*, 112 N.M. 48, 49, 811 P.2d 81, 82 (1991). Third-party beneficiaries are created when the language of the contract itself evidences the intent of both signatories to that contract to benefit a third party. *See id.* at 49-50, 811 P.2d at 82-83.

**{22}** In signing the agreement, Plaintiff agreed

> to submit to arbitration all claims or disputes . . . against (a) all other persons or entities involved with any transaction described under the definition of Covered Claims, (b) all persons or entities who signed or executed any of the documentation relating to any transaction described under the definition of Covered Claims, and (c) all persons or entities who may be liable to either [Plaintiff] or [American General] regarding any . . . Covered Claim[].

As an insurer of Plaintiff's truck, American Security was an "entit[y] who may be liable to [Plaintiff] . . . regarding [a] transaction described under Covered Claims," namely any dispute involving an "insurance product . . . purchased in connection with [the agreement]." From the face of the agreement, both parties intended to confer to insurers of the truck, such as American Security, the right to compel arbitration under the terms of the Arbitration Provisions. Because American Security belongs to a class of entities granted rights under the Arbitration Provisions, it has a right to compel arbitration as a third-party beneficiary. *Valdez v. Cillessen & Son, Inc.*, 105 N.M. 575, 581, 734 P.2d 1258, 1264 (1987).

## CONCLUSION

**{23}** For the foregoing reasons, we affirm the district court's order compelling arbitration.

**{24}   IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Judge**

_____

**ROBERT E. ROBLES, Judge**


**Topic Index for** *Rivera v. American General Financial Services, Inc.*, **Docket No. 28,691**

| **CN** | **CONTRACTS** |
|---|---|
| CN-AC | Adhesion Contract |
| CN-CS | Consideration |
| CN-UC | Unconscionable |

| **CP** | **CIVIL PROCEDURE** |
|---|---|
| CP-AT | Arbitration |

| **IN** | **INSURANCE** |
|---|---|
| IN-TI | Title Insurance |

| **RE** | **REMEDIES** |
|---|---|
| RE-AN | Arbitration |
| RE-EQ | Equity |