# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: December 30, 2014

**NO. 33,136**

**EILEEN J. DALTON,**

　　　Plaintiff-Appellee,

v.

**SANTANDER CONSUMER USA, INC.,**

　　　Defendant-Appellant,

and

**PERFORMANCE AUTOMOTIVE GROUP, INC. d/b/a PERFORMANCE BUICK PONTIAC GMC; LAWRENCE BARELA; JASON HICKS; BDF ACQUISITIONS OF NEW MEXICO, INC. d/b/a SIERRA SANTA FE GMC BUICK; TRAVELERS CASUALTY AND SURETY COMPANY; and BRADFORD D. FURRY,**

　　　Defendants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sarah M. Singleton, District Judge**

Treinen Law Office, P.C.
Rob Treinen
Albuquerque, NM

Public Justice, P.C.
Adrian Alvarez
Washington, D.C.

for Appellee

Lewis Roca Rothgerber LLP
Ross L. Crown
Jason C. Bousliman
Albuquerque, NM

Reed Smith LLP
Margaret A. Grignon
Terry B. Bates
Kasey J. Curtis
Los Angeles, CA

for Appellant

**OPINION**

**VANZI, Judge.**

{1} In this case, we determine whether an arbitration scheme in a vehicle financing contract that carves out exceptions from mandatory arbitration for self-help and small claims remedies is substantively unconscionable. We also determine whether the district court improperly shifted the burden of proof and whether, according to our Supreme Court's interpretation of federal law, a finding of unconscionability under these circumstances is preempted by the Federal Arbitration Act (FAA).

{2} The dispute here arose when Eileen Dalton (Plaintiff) filed suit against Santander Consumer USA, Inc. (Defendant) for fraud, conversion, breach of contract, breach of warranty of title, and various violations of the Uniform Commercial Code (UCC) and the Unfair Practices Act. Defendant moved to compel arbitration of Plaintiff's claims. The district court determined that the self-help and small claims carve-out provisions were unreasonably one-sided, rendering the arbitration clause unenforceable pursuant to *Rivera v. American General Financial Services, Inc.*, 2011-NMSC-033, 150 N.M. 398, 259 P.3d 803, and its progeny. We affirm. We hold that the arbitration clause is substantively unconscionable because the practical effect of the carve-out provisions is to mandate arbitration of Plaintiff's most important and most likely claims while exempting from arbitration Defendant's most important

judicial and non-judicial remedies. We further hold that the district court did not shift the burden of proof and that the FAA does not preclude the application of our generally applicable unconscionability doctrine under these circumstances.

**BACKGROUND**

{3}    Defendant is an Illinois-based subprime auto finance entity. Plaintiff's allegations involve a series of at least two finance contracts that were apparently sold to Defendant by a car dealership operated by Performance Automotive Group (Performance). The finance contracts contain identical arbitration clauses, which state, in relevant part:

> Any claim or dispute, whether in contract, tort, statute or otherwise . . . between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

Despite this sweeping language, a separate clause then expressly exempts certain disputes from mandatory arbitration, providing that:

> You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit.

The contracts also provide that the arbitration clauses "shall be governed by the [FAA]."

{4} Plaintiff's complaint alleged that she purchased a Cadillac from Performance, who then sold the finance contract to Defendant. Despite Plaintiff's timely payments according to the terms of her contract, the Cadillac was repossessed eight months later by another creditor because Performance had failed to pay off a prior lien on the vehicle. In response to the repossession, Performance agreed to credit Plaintiff the $4,500 she had paid on the Cadillac toward the purchase of a substitute vehicle. Plaintiff returned to Performance, selected a Pontiac G6, and signed a second purchase agreement and finance contract, now providing for a higher monthly payment. Although the facts are in dispute, the Pontiac finance contract, like the Cadillac contract before it, may have been sold to Defendant. Shortly thereafter, and for reasons that are not clear, the Pontiac was also repossessed. Plaintiff was left without a vehicle, and her $4,500 was never returned.

{5} Plaintiff filed suit against a number of corporate entities and individuals involved in these transactions, including Defendant, alleging fraud, conversion, breach of contract, breach of warranty of title, and violations of the UCC and the Unfair Practices Act. Defendant moved to compel arbitration pursuant to the identical arbitration clauses in the Cadillac and Pontiac contracts. The district court denied

3

Defendant's motion, reasoning that the carve-out provisions were substantially similar to the exceptions from arbitration that our Supreme Court examined in *Rivera*. The district court concluded that self-help remedies are of absolutely no use to consumers like Plaintiff and that small claims remedies are similarly one-sided, rendering the arbitration provision substantively unconscionable. Defendant timely appealed.

**DISCUSSION**

**Standard of Review**

{6}     This Court reviews de novo both the denial of a motion to compel arbitration and the issue of unconscionability of a contract. *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901. We also apply a de novo standard of review to the interpretation of statutes, including the FAA. *Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 25, 304 P.3d 409.

**Unfairly One-Sided Carve-Out Provisions Are Substantively Unconscionable**

{7}     "[A] finding of unconscionability may be based on either procedural or substantive unconscionability, or a combination of both." *Rivera*, 2011-NMSC-033, ¶ 47. In this case, the district court's ruling and the arguments on appeal have only addressed the issue of substantive unconscionability. "Substantive unconscionability concerns the legality and fairness of the contract terms themselves, and the analysis

4

focuses on such issues as whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns." *Id.* ¶ 45 (internal quotation marks and citation omitted). Thus, contract provisions that unreasonably benefit one party over another have been held to be substantively unconscionable. *Id.* ¶¶ 46, 53-54.

{8}     In *Cordova*, our Supreme Court held that a one-sided arbitration provision in a consumer loan agreement was void as unconscionable. 2009-NMSC-021, ¶ 1. The arbitration clause at issue was wholly one-sided on its face. In the event of default, it reserved the lender's option to avail itself of any and all "remedies in an action at law or in equity, including but not limited to, judicial foreclosure or repossession[,]" while simultaneously denying access to the courts to borrowers for any reason whatsoever. *Id.* ¶¶ 26-27 (internal quotation marks omitted). This "self-serving arbitration scheme" was so unreasonably one-sided that it could not be enforced. *Id.* ¶¶ 32-34.

{9}     Two years later, the Supreme Court reaffirmed this principle in *Rivera* when it corrected this Court's "overly narrow construction" of the unconscionability doctrine. 2011-NMSC-033, ¶¶ 1, 39-54. The arbitration clause in the car title loan contract addressed in *Rivera* exempted from mandatory arbitration the lender's self-help and judicial remedies, such as repossession or foreclosure, "with respect to any

property that secures [the loan.]" *Id.* ¶ 3. This Court attempted to distinguish *Cordova* on the basis that the arbitration clause in *Rivera* was not completely one-sided because it still allowed borrowers to compel arbitration of any of the lender's claims that arose from disputes about the loan note itself. *See Rivera v. Am. Gen. Fin. Servs., Inc.*, 2010-NMCA-046, ¶¶ 9-10, 148 N.M. 784, 242 P.3d 351, *rev'd*, 2011-NMSC-033. We thus reasoned that the exemption only applied to disputes over the lender's interest in the collateral that secured the loan and that those actions were so heavily regulated by Article 9 of the UCC that their exemption was reasonable. *Id.* ¶¶ 12-13. In upholding the arbitration clause, we expressed concern that, "without access to these judicial and extra-judicial procedures, [the lender] would lose many of the statutory protections it enjoyed as a secured creditor." *Id.* ¶ 13.

{10}   Our Supreme Court expressly rejected our reasoning and reversed. *Rivera*, 2011-NMSC-033, ¶¶ 50-52. Notwithstanding the lender's status as a secured creditor, the Court held that the lender's ability to access the courts for its likeliest claims while forcing the plaintiff to arbitrate the claims that she may have was unreasonably one-sided. *Id.* ¶ 53. The Supreme Court explained that "[a]s a matter of law arbitrators have broad authority and are deemed capable of granting any remedy necessary to resolve a case" and that "[p]arties may effectively pursue any remedy or relief in arbitration including statutory, common law, injunctive, equitable, and all other

6

lawful remedies and relief." *Id.* ¶¶ 51-52 (internal quotation marks and citation omitted). Thus, since "an arbitrator can be given the authority to address any claims a lender may have against a borrower[,]" including a secured creditor's Article 9 claims, the one-sided arbitration exemptions were unreasonable and void under state law. *See id.* ¶¶ 52-54.

**Facially Bilateral Carve-Outs**

{11} After *Rivera*, we subsequently applied the unconscionability doctrine to invalidate a series of ostensibly bilateral arbitration clauses in admission agreements between nursing homes and their residents. *See Figueroa v. THI of N.M. at Casa Arena Blanca, LLC*, 2013-NMCA-077, ¶¶ 33-35, 306 P.3d 480 (invalidating a clause that exempted all guardianship proceedings as well as collections and eviction actions); *Ruppelt v. Laurel Healthcare Providers, LLC*, 2013-NMCA-014, ¶¶ 10-18, 293 P.3d 902 (invalidating a clause that exempted disputes pertaining to collections or discharge of residents); *cf. Bargman v. Skilled Healthcare Group, Inc.*, 2013-NMCA-006, ¶ 24, 292 P.3d 1 (examining a clause identical to that in *Ruppelt* but remanding to give the defendant an opportunity to present evidence that the one-sided clause was nonetheless reasonable).

{12} While *Cordova* and *Rivera* dealt with arbitration clauses where one-sidedness was evident on the face of the agreement, the clauses in the nursing home cases were

7

facially bilateral. The nursing home carve-outs excluded from arbitration various claims that either party could technically bring, but that were, as a practical matter, unlikely to be brought by a resident. *See Figueroa*, 2013-NMCA-077, ¶¶ 26, 28-30; *Ruppelt*, 2013-NMCA-014, ¶¶ 3, 15-18. In both *Figueroa* and *Ruppelt*, we determined that the "practical effect" of the ostensibly bilateral clauses was to unreasonably favor the nursing homes. *Figueroa*, 2013-NMCA-077, ¶ 29 (stating that the practical effect of the agreement "is no different from *Cordova* and *Rivera*: the resident is precluded from bringing any claims that he or she would likely have, while the most likely claims the nursing home would have against the resident are excluded from arbitration"); *Ruppelt*, 2013-NMCA-014, ¶ 18 (stating that "although the exemption provision may facially appear to apply evenhandedly, its practical effect unreasonably favors [the d]efendants, and the provision's bilateral appearance is inaccurate"). We thus refused to uphold the entire arbitration scheme in both cases.

{13}     Applying these principles, we agree with the district court that the carve-out provisions in this case, while purportedly bilateral, are unfairly and unreasonably one-sided in favor of Defendant and thus render the agreement to arbitrate substantively unconscionable. However, we first acknowledge the differences between the carve-outs at issue here and those in *Rivera*.

8

{14} The carve-out provision in the car title loan contract in *Rivera* stated, in relevant part:

> [The plaintiff] cannot elect to arbitrate [the l]ender's self-help or judicial remedies including, without limitation, repossession or foreclosure, with respect to any property that secures any transaction . . . . In the event of a default . . . , [the l]ender can enforce its rights to [the plaintiff's] property in court or as otherwise provided by law, and [the plaintiff] cannot require that [the l]ender's actions be arbitrated.

2011-NMSC-033, ¶ 3 (internal quotation marks omitted). There are two differences between *Rivera* and the present case. First, the clause in *Rivera* facially distinguished between the rights of the lender and the borrower, expressly exempting from arbitration only the lender's "self-help or judicial remedies" with respect to the collateral. In contrast, the clause in this case is facially neutral. However, this difference is superficial. As discussed previously in this Opinion, we do not rely on ostensible neutrality; rather, we look to the practical effect of a carve-out. *See Figueroa*, 2013-NMCA-077, ¶ 29; *Ruppelt*, 2013-NMCA-014, ¶ 18.

{15} Second, unlike *Rivera*, the clause at issue here does not exempt *judicial remedies*. Instead, it exempts all remedies in small claims court. Under the current circumstances, we conclude that this is a distinction without a meaningful difference. While we acknowledge that a fair reading of *Rivera* evinces concern about one-sided access to the courts, *see, e.g.*, 2011-NMSC-033, ¶¶ 39, 46, 48-49, 53, it is apparent that the small claims carve-out has the practical effect of preserving Defendant's most

9

important claims as a secured creditor while severely limiting a borrower's access to judicial redress. We explain.

**The Practical Effect of the Small Claims Carve-Out Renders the Arbitration Scheme Substantively Unconscionable**

{16}     We conclude that the small claims carve-out renders Defendant's arbitration scheme unconscionable for two reasons. First, it preserves Defendant's access to the courts to assert its most important claims as a secured creditor. When a consumer-borrower defaults on her payments, the secured party to a used car financing contract—in this case Defendant—may repossess the car pursuant to Article 9 of the UCC. *See* NMSA 1978, § 55-9-609 (2001). If the repossession can be effected without a breach of the peace, for instance, if the borrower keeps the car in a driveway as opposed to a garage, the secured party can simply take the vehicle without judicial process. *See* § 55-9-609(b). So-called "self-help" repossession does not usually end the dispute, as the creditor, seeking to recover its loss, may then sell the vehicle in a commercially reasonable manner. *See* NMSA 1978, § 55-9-610(a) (2001). After sale, the creditor typically sues the borrower for any remaining balance owed. If the parties have signed a mutually binding arbitration agreement, the dispute over any deficiency would then be brought before an arbitrator. But in this case, Defendant has carved out a small claims exception in a financing contract for cars

10

valued at $13,297.93 and $15,965.32, respectively. The amounts actually financed on the vehicles were $11,074.93 and $14,305.74. Thus, Defendant could safely assume that any ordinary suit for a post-reasonable-sale deficiency judgment would claim damages of less than $10,000 and would therefore be exempt from arbitration by the terms of the small claims carve-out. *See* NMSA 1978, § 35-3-3(A) (2001) (establishing the jurisdictional limits of the magistrate courts); NMSA 1978, § 34-8A-3(A)(2) (2001) (establishing jurisdictional limits of the metropolitan court). As drafted, this scheme affords Defendant the option to forego arbitration during the entire typical default process from repossession to sale to deficiency suit to garnishment of wages in the magistrate courts. *See Cordova*, 2009-NMSC-021, ¶ 26 (stating that cases of default are the most likely reason for lenders to take action against their borrowers).

{17}  In an alternative scenario, the borrower keeps the car in a garage where it cannot be repossessed without a breach of the peace or a court order. Even in these cases, however, Defendant's arbitration scheme preserves important access to judicial redress for Defendant. The small claims carve-out, which by its terms applies to any "remedies in small claims court," also reserves access to the courts for Defendant to *judicially* foreclose on either vehicle by replevying the collateral if the fair market value of the vehicle falls below $10,000. *See* NMSA 1978, § 35-11-1 (1975)

11

(providing for the civil remedy of replevin in the magistrate courts). Depending on the values of the Cadillac or Pontiac at the time of default, these claims would not always be available to Defendant, but they would likely be available during the greater part of the life of either loan, and they thus contribute to a determination of substantive unconscionability. *See Rivera*, 2011-NMSC-033, ¶¶ 53-54 (concluding that a creditor's carve-out for judicial repossession is unfairly one-sided); *Ruppelt*, 2013-NMCA-014, ¶ 14 (focusing on fairness rather than "complete one-sidedness").

{18}    Second, our Supreme Court has identified a borrower's typical claims against a lender to include the exact types of claims that were brought in this case: fraud and misrepresentation, "claims based on federal or state consumer protections, such as the New Mexico Unfair Practices Act, and tortious debt-collection causes of action[.]" *Cordova*, 2009-NMSC-021, ¶ 27. In contrast to Defendant's likely claims, these claims, which are protective of consumers and often provide for punitive damages, attorney fees, statutory damages, or injunctions, are unlikely to meet the jurisdictional limits of small claims court. *See generally* NMSA 1978, § 57-12-10 (2005) (setting forth the statutory remedies available for unfair trade practices); NMSA 1978, § 55-9-625 (2001) (describing the remedies available when a secured party fails to comply with Article 9 of the UCC); *Romero v. Mervyn's*, 1989-NMSC-081, ¶¶ 31-34, 109 N.M. 249, 784 P.2d 992 (holding that punitive damages may be available in contract

claims when overreaching, malicious, or wanton conduct is involved). Thus, the claims that Defendant has subjected to mandatory arbitration are the same claims "a borrower is most likely to litigate in a dispute with a lender, and the very ones the lender is least likely to want to litigate." *Cordova*, 2009-NMSC-021, ¶ 27.

{19} Given Defendant's access to judicial redress for its most likely claims, the arbitration clause's one-sided application to claims for injunctive relief is particularly concerning. This is evident in the context of a typical dispute between a secured creditor and a borrower. When a secured creditor wants to stop a borrower from using the collateral, it need not seek an injunction because it can simply repossess the collateral. Thus, Article 9 shifts the burden of initiating judicial action—or in this case, arbitration—to the borrower. *See* Edward L. Rubin, *The Code, the Consumer, & the Institutional Structure of the Common Law*, 75 Wash. U. L.Q. 11, 37 (1997). For instance, it is the aggrieved borrower who must sue to enjoin the creditor from conducting an unlawful sale. *See* § 55-9-625. However, this important borrower's remedy is uniquely subject to Defendant's arbitration clause since the small claims courts cannot issue injunctions. Section 35-3-3(C)(6).[1]

---

[1]When an injunction is granted by the arbitrator, Defendant's arbitration clause then singles it out as an appealable award.

13

{20}	A recent decision of a federal court applying California's unconscionability doctrine to an arbitration scheme identical to that in this case is in accord with our analysis. *See Trompeter v. Ally Fin., Inc.*, 914 F. Supp. 2d 1067 (N.D. Cal. 2012). In *Trompeter*, the court noted that the defendant's carve-outs for self-help repossession and small claims remedies operated in tandem to allow the defendant the option to forego arbitration during typical disputes with its borrower. *Id.* at 1073-74. "If the consumer stops paying on the debt," the court stated, "his or her vehicle will likely be repossessed and the consumer could be held liable for any deficiency after disposition of the repossessed vehicle[.]" *Id.* at 1073. Meanwhile, the borrower's likely remedies, such as injunctions or statutory lemon law claims were all subject to the arbitration clause. *Id.* at 1073-74. This contributed to a finding of unconscionability. *Id.*

{21}	The bulk of Defendant's argument urges us to ignore the self-help carve-out. Defendant contends that "[t]he arbitration provision does not exempt from arbitration [the] right to proceed with self-help repossession. It simply notes the existence of such remedies." In other words, according to Defendant, the language exempting self-help applies to a non-judicial, non-arbitrable right is thus superfluous and therefore cannot be unconscionable.

14

{22} Even assuming that self-help repossession is necessarily non-arbitrable—which in our view is not entirely clear, *see Rivera*, 2011-NMSC-033, ¶ 51 ("As a matter of law arbitrators have broad authority and are deemed capable of granting any remedy necessary to resolve a case."); *see also Buffalo Forge Co. v. United Steelworkers of Am., AFL-CIO*, 428 U.S. 397, 405-06 (1976) (stating that a court would be permitted to enjoin a self-help labor strike if the strike arose from a dispute that was subject to binding arbitration); *Greene v. Alliance Auto., Inc.*, 435 S.W.3d 646, 653 (Mo. Ct. App. 2014) (examining a clause requiring arbitration prior to exercise of a creditor's self-help repossession remedy), the fact remains that Defendant is a secured creditor that can generally act outside the judicial process to foreclose on its collateral. Including an arbitration clause in a vehicle financing contract would normally subject to mandatory arbitration Defendant's most important remaining remedies: the ability to sue for a deficiency judgment or the ability to judicially foreclose on the vehicles when self-help repossession cannot be completed without a breach of the peace. In this case, however, Defendant has carved out a small claims exception that encompasses both of these remedies. Thus, Defendant's small claims carve-out, viewed in the context of Defendant's self-help right—whether pre-existing or also carved out—renders the agreement to arbitrate unfairly one-sided.

15

{23}     While ostensibly bilateral on its face, the practical effect of Defendant's decision to exempt small claims remedies, much like the "collections" exceptions at issue in our nursing home cases, is to create a choice of forum for its preferred claims, while relegating a borrower's most likely claims to mandatory arbitration. *See Figueroa*, 2013-NMCA-077, ¶ 29; *Ruppelt*, 2013-NMCA-014, ¶ 18. Under these circumstances, we hold that the arbitration clauses in the Cadillac and Pontiac finance agreements are substantively unconscionable as a matter of law.

**The District Court Did Not Shift the Burden of Proof to Defendant**

{24}     Defendant next argues that the district court improperly allocated to it the burden to prove the absence of unconscionability. Specifically, Defendant contends that the district court raised and decided the issue of the small claims exemption "*sua sponte*" and without any evidence from Plaintiff, thereby impermissibly shifting the burden of proof. We disagree.

{25}     The parties do not dispute that the proponent of the affirmative defense of unconscionability bears the burden of proof. *Strausberg*, 2013-NMSC-032, ¶ 48. *Strausberg* was decided after the parties completed their briefing on Defendant's motion to compel arbitration but five days before the district court held its hearing on the motion. At the hearing, Plaintiff, through her attorney, provided the court with a copy of the *Strausberg* decision and informed the court that she bore the burden of

16

proving unconscionability. Plaintiff then analogized this case to *Rivera* in light of the nursing home cases and their recognition of the "practical effect" of arbitration provisions. The district court did not hold an evidentiary hearing to determine whether the borrower in a vehicle financing contract is less likely than the lender to file suit in small claims court. Instead, for some of the reasons discussed in this Opinion, the district court concluded that the arbitration clause at issue here is substantially similar to that in *Rivera* and is therefore unconscionable.

{26} We note first that the district court was entitled to raise the small claims issue and request argument from counsel at the hearing on Defendant's motion to compel arbitration. We can find no authority to the effect that a court shifts the burden of proof by asking counsel a question at a hearing *sua sponte*. "The theory of pleadings is to give the parties fair notice of the claims and defenses against them, and the grounds upon which they are based." *Schmitz v. Smentowski*, 1990-NMSC-002, ¶ 9, 109 N.M. 386, 785 P.2d 726. In Plaintiff's response to the motion, she pleaded as an affirmative defense that the arbitration clause was unconscionable. Her pleading specifically stated that the small claims exemption does not diminish the impact of the self-help repossession carve-out because Defendant "still has an unlimited right to access the courts for the claims it is most likely to bring, while a consumer still is forced into arbitration for the claims that a consumer would most likely want to

17

bring." Defendant was on sufficient notice that the court would have to consider the value to consumers of the small claims carve-out in order to make its ruling on Plaintiff's affirmative defense. Both parties argued the point at the hearing, and the court was persuaded by Plaintiff. We find no error here.

{27}     Second, the district court was not required to hold an evidentiary hearing on the small claims issue. *See State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 32, 329 P.3d 658 (stating that "substantive unconscionability can be found by examining the contract terms on their face"). The court's conclusion was based on substantial similarities to exemptions deemed unconscionable by our appellate courts. While it is true that Plaintiff bore the burden of persuasion on the issue, Plaintiff argued pursuant to our precedents that it is self-evident that a small claims exception unfairly favors lenders under these circumstances. *See Figueroa*, 2013-NMCA-077, ¶ 31. Defendant failed to adequately rebut that argument. A similar situation arose in *Figueroa*, where we stated:

> In further support of its claim, [the d]efendant asserts that [the p]laintiff failed to present evidence that the arbitration agreement exempts the most likely claims [the d]efendant would bring against a resident. We conclude that the inference that guardianship, collection, and eviction proceedings would be the most likely claims of the nursing home is self-evident.

*Id.* Given the value of the collateral in this case and the ability of a secured creditor to sue for a deficiency judgment in small claims court, we conclude that the

18

usefulness of the small claims carve-out to Defendant is similarly self-evident. Moreover, given our Supreme Court's determination that a borrower's most likely claims against a lender include fraud and misrepresentation, "claims based on federal or state consumer protections, such as the New Mexico Unfair Practices Act, and tortious debt-collection causes of action[]," *Cordova*, 2009-NMSC-021, ¶ 27, and in light of our statutes and precedents that make available injunctions, punitive damages, or trebled damages in those types of cases, we conclude that the small claims carve-out is not similarly suitable for borrowers. Therefore, as in *Figueroa*, we reject Defendant's contention that a lack of evidence requires reversal. *See* 2013-NMCA-077, ¶ 31. If Defendant desired to factually dispute the general precedent that was established by our appellate courts, it had the right to present evidence to distinguish the exception in this particular case. *See Bargman*, 2013-NMCA-006, ¶¶ 22-24 (recognizing the right to address the issue of unconscionability by presenting evidence regarding the neutral and other legitimate reasons for an exception to mandatory arbitration). Defendant's failure to utilize its opportunity to factually rebut the apparent one-sidedness of the carve-out exception to arbitration was of its own choosing and will not be second guessed on appeal. *See id.* ¶ 17 (clarifying that there is no inflexible rule that one-sided clauses are always unreasonable and cannot be reviewed on a case-by-case basis).

**Our Conclusion Is Not Preempted by the FAA**

{28}    "The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, ___ U.S. ___, ___, 131 S. Ct. 1740, 1745 (2011). The FAA requires courts to enforce a valid arbitration agreement unless the agreement is revocable under established principles of contract law. *See* 9 U.S.C. § 2 (2013) ("A written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). This "savings clause" permits state courts to invalidate agreements to arbitrate via "generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility*, ___ U.S. at ___, 131 S. Ct. at 1746 (internal quotation marks and citation omitted).

{29}    In accordance with the FAA, our Supreme Court has consistently upheld the application of our generally applicable unconscionability doctrine to one-sided arbitration agreements. *See Strausberg*, 2013-NMSC-032, ¶¶ 49-50 (holding that a special rule that applies only to nursing home arbitration agreements is preempted by the FAA, but stating that "a court may, consistent with the FAA . . . invalidate an

20

arbitration agreement through the application of an existing common law contract defense such as unconscionability"); *see also Flemma v. Halliburton Energy Servs., Inc.*, 2013-NMSC-022 (same), ¶ 19, 303 P.3d 814; *Rivera*, 2011-NMSC-033, ¶¶ 15-18 (same); *Cordova*, 2009-NMSC-021, ¶¶ 35-38 (same).

{30} The parties argue the merits of a recent decision of the Tenth Circuit Court of Appeals, which determined that our state courts are applying the unconscionability doctrine based on an impermissible "perceived inferiority of arbitration to litigation as a means of vindicating one's rights." *THI of N.M. at Hobbs Ctr., LLC v. Patton*, 741 F.3d 1162, 1169 (10th Cir. 2014). We do not address this issue. Appeals in this Court are governed by the decisions of the New Mexico Supreme Court—including decisions involving federal law, and "even when a United States Supreme Court decision seems contra." *State v. Manzanares*, 1983-NMSC-102, ¶ 3, 100 N.M. 621, 674 P.2d 511; *see State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶ 20, 135 N.M. 375, 89 P.3d 47 (stating that this Court is bound by our Supreme Court precedent); *State v. Wilson*, 1994-NMSC-009, ¶ 5, 116 N.M. 793, 867 P.2d 1175 (same). As discussed previously in this Opinion, our Supreme Court has already expressly rejected Defendant's precise argument that applying the unconscionability doctrine to a carve-out exempting Article 9 rights is somehow inconsistent with the FAA. *Rivera*, 2011-NMSC-033, ¶¶ 50-52. We are bound by that decision.

{31} Accordingly, we conclude that the arbitration provisions are unfairly one-sided and unenforceable. Since "the exemptions of certain claims from arbitration are so central to the agreement that they are incapable of separation from the agreement to arbitrate," the arbitration clause must be stricken from the contract in its entirety. *Figueroa*, 2013-NMCA-077, ¶ 39.

**CONCLUSION**

{32} The order of the district court is affirmed.

{33} **IT IS SO ORDERED.**


_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**


_____

**CYNTHIA A. FRY, Judge**


_____

**TIMOTHY L. GARCIA, Judge**